[No. 5954.]

# THE CITY OF SAN JOSÉ *v.* THE SAN JOSÉ AND SANTA CLARA RAILROAD COMPANY.

Taxation of Occupations.—The Constitution of this State does not prohibit the Legislature to tax occupations, nor to authorize municipal corporations to tax them for purposes of revenue.

SAME—RULE OF CONSTRUCTION.—When power is conferred on a municipal corporation to "license and regulate" occupations, the whole charter and the general legislation of the State pertinent to the subject must be consulted, in order to determine whether the power to "license and regulate" includes the power to tax occupations for revenue purposes.

LOCAL TAXATION OF STREET RAILROAD.—A franchise conferred by the Legislature on private persons, to construct a railroad track through the streets of a city, and to run cars thereon, and prescribing certain conditions to be performed by the grantees, is not a contract in such sense as to exempt the occupation of operating the road from proper police regulations, or from taxation by the municipal authorities in cases authorized by law.

SAME.—The fact that the railroad extends and cars are run beyond the corporate limits does not exempt the occupation from taxation by the municipality.

APPEAL from the District Court of the Twentieth Judicial District, County of Santa Clara.

Action to recover an amount alleged to be due for street car license, under an ordinance referred to in the complaint as follows:

"That on the 4th day of October, A. D. 1875, the Mayor and Common Council of the City of San José passed and approved an ordinance entitled "An Ordinance concerning Street Railroads and Street Cars," which said ordinance is in the words and figures following, to wit:

ORDINANCE CONCERNING STREET RAILROADS AND STREET CARS.

"Be it ordained by the Mayor and Common Council of the City of San José, as follows:

"1. That any person, persons, or corporation, owning, managing, or controlling any street railroad within the limits of the City of San José, who shall run or propel any car, or who shall cause or permit any car or cars to be run or propelled over or upon any such street railroad within the limits of said city, shall pay to said city an annual license of twenty dollars ($20) in gold coin upon and for each and every car so run or propelled upon or over any such street railroad within said city; *provided*, that when any street railroad connects the City of San José with any other city or town in the County of Santa Clara, only one-half of the sum hereinbefore named shall be collected

from or paid annually by the person or persons owning or controlling such street railroad so connecting said City of San José with any other city or towns.

" 2. Any person or persons violating or causing the violation of any of the provisions of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction thereof before any competent Court shall be fined in a sum not exceeding one hundred dollars ($100).

" 3. This ordinance shall be in force from and after the 4th day of October, A. D. 1875.

" B. D. MURPHY,

" Mayor of San José.

" Approved and passed this 4th day of October, 1875.

" W. N. CASTLE.

" City Clerk."

The defendant had judgment, and the plaintiff appealed.

*Frs. E. Spencer*, for Appellant.

The defendant resists the claim upon the ground that the Act of March 24th, 1868, under which it claims the franchise and right to operate its railroad and cars, must be construed as a contract, exempting it from the payment of any charge.

The plaintiff contends that the act in question cannot receive such construction, but that the ninth section of the City Charter (Act of March 17th, 1874) and sec. 508 of the Civil Code are in force, and confer upon the city full power to collect such license.

A grant to a corporation to carry passengers in cars over the streets of a city does not necessarily involve exemption from liability to municipal regulation. The right is neither greater nor less than that a natural person possesses. (*The Frankford &c. R. R. Co.* v. *The City of Philadelphia*, 58 Penn. St. 119; *Johnson* v. *Philadelphia*, 60 Penn. St. 445.) Where the charter of a corporation is silent on the subject of taxation, the company is liable to pay a specific tax imposed by a subsequent act. (*People* v. *Detroit &c.* 1 Mich. 458.)

And a corporation is not exempted from paying an *ad valorem*

tax, because it is required by the terms of its charter to pay a specific license tax. (*Louisville City Railway Co.* v. *City of Louisville*, 4 Bush, 479.) Where there is no exemption in the charter of a bank, it may be required to pay taxes by a subsequent act of the Legislature. (*Providence Bank* v. *Billings*, 4 Peters, 561; 22 Wall. 375; *State* v. *Herod*, 29 Iowa, 123; Dillon Municipal Corp. secs. 571–628; *Appeal of N. B. & M. R. R. Co.* 32 Cal. 504; *City of New Haven* v. *Fairhaven &c R. R. Co.* 38 Conn. 430.)

The intention to exempt from taxation or other burdens borne by the citizens generally must clearly appear, and will not be inferred. (*Second Municipality of N. O.* v. *N. O. &c. R. R. Co.* 10 Robinson; *Pacific R. R. Co.* v. *Cass Co.* 53 Mo. 27; *Orange & Alexandria R. R. Co.* v. *Alexandria*, 17 Gratt. 182; *Erie Railway Co.* v. *Commonwealth*, 66 Penn. St. 86; *B. & O. R. R. Co.* v. *Supervisors*, 3 W. Va. 331.)

Under the Constitution of this State taxation must be equal, *i. e.*, imposed equally upon all persons or property of a given class within a particular governmental department. Therefore an exemption by the Legislature of a particular individual from any kind of burden lawfully imposed upon other persons or property of the same class, in the same district, is unconstitutional. It is, in fact, an attempt to alienate a right of sovereignty. (*Mott* v. *Pennsylvania R. R. Co.* 30 Penn. St. 27; *Iowa Homestead Co.* v. *Webster Co.* 21 Iowa, 227.)

*Moore, Laine & Leib*, for Respondent.

The Legislature of California, on March 24th, 1868, (Statutes of 1867–8, p. 259) contracted with S. A. Bishop and others, the grantors of defendants, that he and his co-grantees and their assigns should have the right to lay down, maintain, and operate a railroad over a certain designated route for twenty years, *provided* they should comply with their part of said contract, viz :

1. That the rails should be of iron, and of good and substantial make.

2. That they should run cars thereon every day at convenient hours for the transportation of passengers.

3. That the track should be laid flush with the streets.

4. That the cars should be of a substantial nature, and so constructed as to insure comfort and convenience to passengers.

5. That the same should be run at a moderate speed.

6. That the railroad should be paved or macadamized, as the city authorities should direct.

7. That the railroad should be built in a certain time.

All these things and others the grantees were to do, or their contract was ended under the express provisions of sec. 7. All this they have done.

On October 4th, 1875, the City of San José, through which a portion of said railroad runs, passed an ordinance requiring the defendant to pay a license tax for the privilege of complying with its own contract.

It would appear that the bare statement of the action would be its own answer. The city—or stating most favorably for plaintiff, the Legislature, through the city—after having deliberately made a contract, onerous and stringent upon us, but with which we have strictly complied—a contract upon the strength of which we have invested our money—now seeks to violate it. We submit that good morals, the law, and the two Constitutions themselves, both State and Federal, protect us from this injustice. (Const. of Cal. art. 1, sec. 16; Const. of United States, art. 1, sec. 10, subd. 1; *Mayor* v. *Second Av. R. R.* 32 N. Y. 261; *Mayor* v. *Third Av. R. R.* 33 N. Y. 42; *Stein* v. *Mayor*, 20 Am. 283.)

But the Legislature never attempted to give the city such power.

The power it has is found in Stats. 1875-6, p. 628, where it says: "To license and regulate all and every kind of business authorized by law and transacted and carried on in said city; to fix the rates of license tax upon such business."

A railroad is not a business within the meaning of these clauses. If it were, still it is not a business transacted or carried on in the city within the meaning of the law. As well might we say that the Southern Pacific or Central Pacific Railroads were liable to this tax because part of their roads were within the city. Or, carrying it one step further, every mer-

chant or business man in the State would be liable to this tax, the ramifications of whose business might happen to extend to San José.   Assuming, however, this is the kind of business referred to, still the city has a right to do what?   To regulate and to license it.   We need no license permitting us to operate the railroad, for we already have the permission—in fact, it is a part of our duty under the contract with the sovereign.   Nor do we think the city could regulate the railroad, for all the necessary regulations are fully and minutely prescribed by the sovereign and made a part of the contract.   Were it otherwise, however, the city could only put on a license tax sufficient to cover the expense of enforcing its regulations of the railroads. This is the true construction of their power.   (Cooley Const. Lim. 201.)

The city never attempted to regulate the railroad, and it is apparent that the only object of this ordinance was revenue.

We claim that each of these grounds is an answer to plaintiff's action.

By the Court, CROCKETT, J.:

The franchise granted by the Act of March 24th, 1868, to Bishop and his associates, to construct a railroad track along and through certain streets of the City of San José, and to run cars thereon, is not a contract in such sense as to exempt the business or occupation of operating the road from all proper police regulations, or from taxation in the same manner as other occupations may be taxed, under legislative authority.   (*Cooley on Taxation,* 385–86; *Frankford etc. R. R. Co.* v. *Philadelphia,* 58 Pa. St. 119; *Johnson* v. *Philadelphia,* 60 Pa. St. 445.)

The charter of the City of San José, in defining the powers of the Common Council, authorizes it, amongst other things, " to license and regulate all and every kind of business authorized by law, and transacted and carried on in said city, and to fix the rates of license *tax* upon said business."   In construing a similar power conferred upon the Board of Supervisors of the City and County of San Francisco, we said in *Ex parte Frank,*

52 Cal. 606, " when the power conferred upon the corporation, as in this case, is to 'license and regulate' callings and occupations, a question has sometimes arisen in the Courts, whether, under such a grant of power, the corporation could exact license fees for purposes of revenue, or should be limited to a sum reasonably sufficient to defray the expense of granting the license. (Dillon on Mun. Corp. 291.) But the rule as stated by Judge Dillon is, that in construing the words of the grant the whole charter and general legislation of the State respecting the subject-matter must be consulted in order to determine whether by the terms "license and regulate" it was intended to authorize licenses for purposes of revenue. Tested by this rule, we held that the power to "license and regulate" occupations in San Francisco included the power to raise revenue for municipal purposes by means of license fees; and the same rule of construction is applicable to the power conferred on the Common Council of San José. Indeed, the charter itself designates it as a "license *tax* upon such business," indicating clearly that it is a tax on the occupation, and not merely a license to carry on the business.

That the Legislature of this State has the power under the Constitution to tax occupations and to authorize municipal corporations to tax them, was settled as early as the case of *People* v. *Coleman*, 4 Cal. 46, and we are not aware that the proposition has ever been denied or questioned in any subsequent case. On the contrary, it has been recognized and reaffirmed in *Sacramento* v. *California Stage Company*, 12 Cal. 134; *Sacramento* v. *Crocker*, 16 Cal. 120 ; *Ex parte Hurl*, 49 Cal. 557.

The point made by counsel, that the defendant is not subject to the tax because its cars are not employed wholly within the corporate limits of San José, is not tenable. The complaint avers and the answer does not deny that the defendant has its principal place of business in San José, and that it has run its cars through the City of San José to the adjoining Town of Santa Clara. In *Sacramento* v. *California Stage Company*, *supra*, the point was made that the defendant was not subject to the tax, because its business of conveying passengers in stage coaches was conducted chiefly outside the corporate limits. But

the Court held the point to be untenable, and we think correctly.

At the argument, counsel expressly waived any question as to the right of defendant to employ powers by it employed, or to enjoy the franchises granted to its assignors.

Judgment reversed and cause remanded.

Mr. Justice RHODES did not express any opinion.