[Civ. No. 10799. Second Appellate District, Division Two.—May 8, 1936.]

FRANK VITALE, Respondent, v. CITY OF LOS ANGELES (a Municipal Corporation), Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Arthur Loveland and Leonard Husar, Deputies City Attorney, for Appellant.

Hanna & Morton for Respondent.

GOULD, J., *pro tem.*—Under an ordinance of the City of Los Angeles plaintiff and his assignors paid to that municipality under protest various sums of money for liquor license stamps, both before and after December 5, 1933, the effective date of section 22, article XX of the Constitution of the state of California, which vested in the state the exclusive right and power, subject only to United States internal revenue laws, to control, license and regulate the liquor traffic. Decisions of this court prior to the commencement of this action had declared that as to dates before December 5, 1933, the Los Angeles city ordinance here in question, imposing a license tax on liquor businesses within that city, was valid and enforceable (*Los Angeles Brewing Co.* v. *City of Los Angeles*, 8 Cal. App. (2d) 379 [48 Pac. (2d) 65]), but that as to dates subsequent thereto said ordinance was rendered void and unconstitutional by reason of section 22 of article XX of the state Constitution becoming effective on that date by the repeal of the Eighteenth Amendment to the Constitution of the United States. (*Los Angeles Brewing Co.* v. *City of Los Angeles,* 8 Cal. App. (2d) 391 [48 Pac. (2d) 71].)

Although the within action sought in nine counts to recover a total of more than $10,000 for license stamps purchased both before and after December 5, 1933, upon trial it was stipulated that, in view of the decisions above adverted to, the scope of the hearing should be limited to payments made by plaintiff and his assignors on or subsequent to that date. By further stipulation it was agreed "that the only issue to be determined by the court is whether the payments made to the city of Los Angeles . . . were made voluntarily or involuntarily". As to this sole issue the trial court found

that the payments were involuntary, and gave plaintiff judgment in the sum of $3,464.65, as representing the aggregate of amounts paid for license stamps during the time when it is conceded the ordinance was void, to-wit, on and after December 5, 1933. Defendant municipality appeals.

In view of the stipulations of fact entered into in the lower court and the stipulation as to the sole and only issue of law under which the trial was had, we must adhere upon this appeal to the same theory upon which the case was tried, and no new or different theory may be injected into the case. (*Ernst* v. *Searle*, 218 Cal. 233 [22 Pac. (2d) 715].) Argument as to other points will therefore be disregarded, and the matter determined wholly upon the single issue presented to the trial court, viz.: Were the payments voluntary or involuntary?

Each payment was accompanied by a written protest. The making of such protests does not determine that the payments were involuntarily made, but is "only available as evidence of the fact of compulsion". (*McMillan* v. *Richards*, 9 Cal. 365 [70 Am. Dec. 655].) In other words, the protests are simply indicative of the fact that in making the payments there was no acquiescence in the asserted right of the city to impose and collect the license tax.

The character of the payments, whether voluntary or involuntary, is to be determined from the terms of the statute, ordinance or regulation under which the tax or license is imposed, the circumstances attendant upon payment and a consideration of the consequences which might follow upon nonpayment. In the case before us the ordinance imposed severe penalties for violation of its terms—a fine of $500 or imprisonment for a term of six months, or both such fine and imprisonment—with the proviso that each day's violation of the ordinance should be deemed a separate offense. Respondent and his assignors by protest exhibited their reluctance to comply with the legislative enactment, and did what was within their power to demonstrate that they were paying under compulsion. Perusal of the terms of the ordinance indicates that they were faced not only by possible civil but also by criminal prosecution if they did not comply. Such a situation has been characterized as constituting an involuntary payment, and the admitted facts afford satisfactory support for the finding and determination

of the trial court herein that the moneys ordered repaid to respondent and his assignors were involuntarily paid to appellant.

Legal support for the lower court's decision is found in such cases as *City of Chicago* v. *Waukesha Brewing Co.*, 97 Ill. App. 583, *Simmons Hardware Co.* v. *St. Louis*, (Mo.) 192 S. W. 394, and in our own state in *Wheeler* v. *Plumas County*, 149 Cal. 782 [87 Pac. 802], and *Home Telephone & Telegraph Co.* v. *City of Los Angeles*, 40 Cal. App. 492 [181 Pac. 100], in which latter case, similar in many respects to that at bar, the court holds that the protested payment of a license tax under an ordinance imposing criminal penalties for nonpayment is an involuntary payment and may be recovered in an appropriate action, even if there has been no threat of actual imprisonment or deprivation of business rights. The course followed by respondent herein, to wit, the payment of the tax under protest and suit for recovery of the involuntary payment, has been commended as "orderly" in *Underwood Typewriter Co.* v. *Chamberlain*, 92 Conn. 199 [102 Atl. 600], which aptly characterizes such tax payments as made "under pressure of the law's duress".

Judgment affirmed.

Crail, P. J., and Wood, J., concurred.