[Civ. No. 5514. Third Appellate District.—May 11, 1936.]

ROTH DRUG, INC. (a Corporation), et al., Appellants, v. CHARLES G. JOHNSON, as State Treasurer, etc., et al., Respondents.

724

Leslie H. Kranz and Bernard P. Calhoun for Appellants.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondents.

THOMPSON, J.—This is an appeal from a judgment which was rendered against the plaintiffs for failure to amend their complaint after a demurrer thereto had been sustained on the ground that it fails to state facts sufficient to constitute a cause of action.

There are 550 plaintiffs who are parties to this action. They are retail merchants doing business in California. The complaint alleges that they paid under protest sales taxes in

the aggregate sum of $61,293.30 to the Treasurer of the State of California, within ninety days from the date of the adoption of the California Retail Sales Tax Act. (Stats. 1933, p. 2599; Deering's 1933 Supp. Laws of Calif., p. 2360, Act 8493.) It is alleged the act did not become immediately effective for the reason that it failed to receive the votes of two-thirds of the members of each house of the legislature, as required by the provisions of article IV, section 1, of the Constitution of California, and that the taxes were therefore prematurely and illegally collected.

It is also claimed the act is unconstitutional for the reasons hereafter assigned.

The Retail Sales Tax Act was approved July 31, 1933. It recites that it shall become effective immediately. It is not claimed the act required two-thirds of the votes of both houses to render it valid. It is merely asserted that under the constitutional provision it requires a two-thirds vote to render it immediately effective, and that in the absence of such vote it would not become effective until ninety days after the legislature adjourned.

For the purpose of this appeal we must assume the act did not receive the votes of two-thirds of all members of both houses of the legislature. ■ We are, however, of the opinion that article IV, section 1, of the Constitution of California does not require that an act providing for tax levies or appropriations for the usual current expenses of the state shall necessarily be passed by a two-thirds vote. The fourth paragraph of that section provides in that regard:

"The second power reserved to the people shall be known as the referendum. No act passed by the legislature shall go into effect until ninety days after the final adjournment of the session of the legislature which passed such act, except acts calling elections, acts providing for tax levies or appropriations for the usual current expenses of the state, and urgency measures necessary for the immediate preservation of the public peace, health or safety, passed by a two-thirds vote of all the members elected to each house. Whenever it is deemed necessary for the immediate preservation of the public peace, health or safety that a law shall go into immediate effect, a statement of the facts constituting such necessity shall be set forth in one section of the act, which section shall be passed upon a yea and nay vote, upon a

separate roll-call thereon; provided, however, that no measure creating or abolishing any office or changing the salary, term or duties of any officer, or granting any franchise or special privilege, or creating any vested right or interest, shall be construed to be an urgency measure. Any law so passed by the legislature and declared to be an urgency measure shall go into immediate effect.''

To the constitutional mandate that no act shall go into effect until ninety days after the adjournment of the legislature three classes of measures are specifically excepted. It is declared with respect to only the last one of these groups that it shall require a two-thirds vote. It follows that the other two classes of excepted acts may be passed by a mere majority of the votes of each house. That portion of the preceding paragraph, the construction of which is involved in this suit, reads as follows:

''No act . . . shall go into effect until ninety days after the final adjournment of the session of the legislature . . . , except [1] acts calling elections, [2] acts providing for tax levies or appropriations for the usual current expenses of the state, *and* [3] urgency measures necessary for the immediate preservation of the public peace, health or safety passed by a two-thirds vote,'' etc.

To the original text we have added in brackets the three numerals to identify the classes of measures included within the exceptions. For the purpose of clarity, we have also omitted the comma which is found in the original text in the last line above quoted, which appears after the word ''safety''. There would be no difficulty in construing the language requiring a two-thirds vote of the members of both houses as applying to the last class only of *urgency measures,* if it were not for the comma which we have omitted following the word ''safety''. A critical examination of the entire paragraph impels us to hold that it was undoubtedly the intention of the legislature to require a two-thirds vote to enact only the urgency measures for the preservation of the public peace, health or safety. There appears to be good reason for requiring more particular procedure with respect to these police power enactments. There is no reason why acts calling for elections or measures providing for tax levies for the usual current expenses of the state should require a two-thirds vote any more than numerous other ordinary classes

of legislation. If the legislature had intended to require a two-thirds vote to authorize such enactments it would have been very easy to have so expressed it. If the legislature had so intended, after enumerating the exempt classes of acts, it would then have declared, *"each* of which acts must be passed by a two-thirds vote of both houses of the legislature". We must assume the legislature deliberately refrained from saying this because it intended to have the two-thirds vote apply only to the last-mentioned class of urgency measures.

In accordance with the uniform rule of construction, the comma in question may be disregarded, for punctuation is never a controlling factor, and it may be ignored when it becomes necessary to ascertain the true meaning of the language employed by the legislature. In 23 California Jurisprudence, page 733, section 111, it is said in that rgard:

"No doubt punctuation may be considered in reading a statute, but punctuation is never a controlling factor of interpretation, and may be entirely disregarded when necessary to ascertain the true intent and meaning."

To the same effect are the cases of *Mitchell* v. *Superior Court of Fresno County,* 76 Cal. App. 734 [245 Pac. 1109], and *Treiman* v. *Kennon,* 139 Cal. App. (Supp.) 796 [30 Pac. (2d) 636].

In arriving at the foregoing construction of the constitutional provision, it will be observed that the last class of "urgency measures" is distinctly separated from the preceding classes by a comma and by the word "and". There is good reason why this last class should be characterized as urgency measures which are required to be enacted with much more particularity than the preceding classes. This last group falls within the police powers which are authorized only for the necessary welfare of the public health, peace or safety, in emergencies, such as epidemics, insurrections or sudden calamities. The constitutional provision in question clearly indicates that the legislature therefore purposely distinguished between these excepted classes by providing for greater particularity in enacting urgency measures and by requiring a two-thirds vote to enable them to become immediately effective. It will be observed that directly following the enumeration of the three classes which are excepted from the general rule regarding the time when the acts of the

legislature may become effective, it is specifically provided with respect to urgency measures only that they shall contain a distinct section with a "statement of the facts constituting such necessity", which must be passed by a separate roll call of the members upon a yea and nay vote. Following this particular requirement, the paragraph concludes by adding: "Any law *so passed* by the legislature *and declared to be an urgency measure* shall go into immediate effect." Clearly this last sentence applies only to urgency measures, the specific manner of the enacting of which has just been prescribed. This is true for the reason that no other excepted group is designated as "urgency measures", and because the language "so passed" can refer to no class except the urgency measures, since they are the only acts that are required to be passed in a specified manner.

■ Assuming that the last-quoted sentence of the paragraph in question does not refer to the specified excepted acts "calling elections" or to those "providing for tax levies", for the usual current expenses of the state, then there is no provision specifically declaring that such measures may become immediately effective.

The fact that the Constitution fails to specifically provide that the first two classes of excepted measures shall become immediately effective upon their enactment by the legislature does not mean that they, therefore, may not become effective until ninety days after the adjournment of the legislature. The Constitution has definitely declared that all three classes of acts are exempt from the general rule which precludes their becoming effective until ninety days after the adjournment of the legislature. There can be no doubt that in the absence of a constitutional or statutory prohibition to the contrary, the legislature has the inherent power to determine when its enactments shall become effective. That is exactly what the legislature did in the Retail Sales Tax Act which is involved in this case. It is specifically provided therein that "This act, inasmuch as it provides for a tax levy for the usual current expenses of the state, shall, under the provisions of section 1 of Article IV of the Constitution, take effect immediately".

■ We are therefore satisfied the Retail Sales Tax Act was not required to be enacted by a two-thirds vote of the members of each house of the legislature; that the legislature

had the authority to determine in that act when it should become effective, and that by specific declaration it did become effective immediately upon its approval, July 31, 1933.

Even though the Sales Tax Act failed to become effective immediately on July 31, 1933, when it was approved, the collection of the taxes involved in this suit, which were levied for the first quarterly period beginning with August 1, 1933, is not illegal or void for the reason that the act would then become retroactive as to the period of time prior to its becoming effective. Section 3 of the act specifically provides that:

"For the privilege of selling tangible personal property at retail a tax is hereby imposed upon retailers at the rate of two and a half per cent of the gross receipts of any such retailer from the sale of all tangible personal property sold at retail in this state on and after August 1, 1933, and to and including June 30, 1935."

Section 9 of the same act provides that this tax shall become payable in quarterly instalments beginning with the first of August, 1933. There is no law of California to prevent the enforcement of a retroactive measure so long as it does not result in impairing the obligations of a contract or interfere with vested rights existing prior to the enactment of the law. (*City of Los Angeles* v. *Oliver*, 102 Cal. App. 299, 309 [283 Pac. 298]; *McCann* v. *Jordan*, 218 Cal. 577 [24 Pac. (2d) 457].) The retail sales tax, which requires the payment of a specified percentage of the gross receipts from the sales of merchandise, as a privilege of conducting the business of selling tangible personal property, is an "excise" or "privilege tax", as distinguished from a personal property tax. (2 Cooley on Taxation, 3d ed., p. 1094; 2 Cooley's Constitutional Limitations, 8th ed., p. 988; 61 C. J., p. 242, secs. 227, 228; *Vancouver Oil Co.* v. *Henneford*, 183 Wash. 317 [49 Pac. (2d) 14]; *Morrow* v. *Henneford*, 182 Wash. 625 [47 Pac. (2d) 1016].) There is nothing in the pleadings of this case which indicates that the retail sales tax impairs the obligations of any contract or that it deprives the plaintiffs of vested rights which they previously enjoyed.

With reference to the retroactive effect of a statute which imposed a tax upon incomes accruing in a portion of the year which had already passed before the act became effective, the Supreme Court of the United States said in *Brushaber* v.

*Union Pacific R. R. Co.,* 240 U. S. 1, [36 Sup. Ct. 236, 60 L. Ed. 493, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414]:

''The statute was enacted October 3, 1913, and provided for a general yearly income tax from December to December of each year. Exceptionally, however, it fixed a first period embracing only the time from March 1, to December 31, 1913, and this limited retroactivity is assailed as repugnant to the due process clause of the 5th Amendment, and as inconsistent with the 16th Amendment itself. But the date of the retroactivity did not extend beyond the time when the Amendment was operative, and there can be no dispute that there was power by virtue of the Amendment during that period to levy the tax, without apportionment, and so far as the limitations of the Constitution in other respects are concerned, the contention is not open, since in *Stockdale* v. *Atlantic Ins. Co.,* 20 Wall. 323, 331 [22 L. Ed. 348, 351], in sustaining a provision in a prior income tax law which was assailed because of its retroactive character, it was said:

'' 'The right of Congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted; much less can it be doubted that it could impose such a tax on the income of the current year, though part of that year had elapsed when the statute was passed.' ''

The principle determined by the Brushaber case is applicable to the present action. Assuming for the sake of argument that the California Retail Sales Tax Act failed to become effective until ninety days after final adjournment of the legislature, that fact did not render illegal the portion of the first quarterly tax which was based upon sales of merchandise from August 1, 1933, notwithstanding the fact that the proceeds from a portion of these sales were received by the merchant prior to the time when the act became effective. The measure provides that the period during which the tax was imposed extends from August 1, 1933, to and including June 30, 1935. Not even the first quarterly period thereof had elapsed before the time for which all the taxes which are involved in this suit were levied and paid. We are, therefore, of the opinion the taxes were not illegally collected, regardless of whether the act went into immediate effect or whether it became effective only after ninety days from the date of the adjournment of the legislature. (*Continental Oil Co.* v. *Walker,* 285 Fed. 729.)

■ The Retail Sales Tax Act is not unconstitutional for the reason that it contravenes either the federal or the state Constitution by depriving individuals of property without due process of law, or because of an unreasonable discrimination with respect to different classes of business to which it applies.

■ The appellants contend that the act is unconstitutional and void for the reason that it discriminates unreasonably between retail and wholesale merchants; between tangible and intangible personal property, and because section 5 of the act exempts (a) property specifically absolved from taxation by the provisions of the federal and state Constitutions, (b) taxes on the gross receipts from sales of gas, electricity and water, (c) taxes on the sale of gold bullion, gold concentrates or gold precipitates, and (d) gross receipts from sales of property for the performance of contracts for public works executed prior to the date when the Sales Tax Act became effective. We think there is no substantial merit in these claims.

We are of the opinion the California Retail Sales Tax Act does not violate article XIV, section 1, of the federal Constitution by abridging the privileges or immunities of any citizen, nor does it deprive any person of property without due process of law, for any of the reasons assigned, or at all. Nor do we think the act violates article I, section 11, of the Constitution of California, which provides that ''All laws of a general nature shall have a uniform operation''.

The power of a state to levy and collect taxes for governmental purposes is necessarily very broad. It is said in 2 Cooley's Constitutional Limitations, eighth edition, page 986, in that regard:

''The power to impose taxes is one so unlimited in force and so searching in extent, that the courts scarcely venture to declare that it is subject to any restrictions whatever, except such as rest in the discretion of the authority which exercises it. It reaches to every trade and occupation; to every object of industry, use, or enjoyment; to every species of possession; and it imposes a burden which, in case of failure to discharge it, may be followed by seizure and sale or confiscation of property. No attribute of sovereignty is more pervading, and at no point does the power of government affect more constantly and intimately all the relations of life than through the exactions made under it.''

■ So, also, the power of the states to make classifications of persons or property for the purpose of taxation is very broad. (*Adams* v. *Standard Oil Co.*, 97 Miss. 879 [53 So. 692].) A statute is presumed to be constitutional until the contrary appears. It has been said that an act may not be held to be unconstitutional merely because it may contain provisions which seem to be unjust or oppressive, or because it may be deemed to violate the natural, social, or political rights of citizens, unless it appears that those features of the act contravene rights which are guaranteed by the Constitution. (1 Cooley's Constitutional Limitations, 8th ed., p. 341.) ■ If a classification of persons or occupations made for the purpose of imposing taxes is founded on natural, intrinsic or fundamental distinctions which are reasonable in their relation to the object of the legislation and otherwise, they will be deemed to be valid and binding. (5 Cal. Jur., p. 824, sec. 188.) In determining the validity of classifications for the purpose of imposing taxes, it has been said that the classes or groups of persons legally and naturally affected by the statute should be considered. While it is necessary that the law shall affect alike all persons in the same class and under similar conditions, so long as the law operates alike on all persons and property under the same conditions, it is not subject to criticism on the ground that it is not uniform. While the classification should be reasonable, natural and just, in the absence of a showing to the contrary, it will be assumed there are good grounds for the classification, and the act will be upheld. (6 R. C. L., p. 378, secs. 369–376.) In the case of *People* v. *Monterey Fish Products Co.*, 195 Cal. 548, 556 [234 Pac. 398, 401, 38 A. L. R. 1186], it is said in that regard:

"When a legislative enactment is attacked upon this ground [of an unauthorized classification] all presumptions and intendments are in favor of the reasonableness and fairness of the legislative action (5 Cal. Jur., sec. 628 et seq., and cases cited), and the decision of the legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary."

■ The Supreme Court of the United States has definitely held that the Fourteenth Amendment of the federal Constitution, which guarantees to all citizens equal protec-

tion to personal privileges and property rights, does not forbid reasonable discriminations in matters involving taxation. Classifications for the purpose of taxation are recognized as necessary and valid. In making such classifications a sound discretion is accorded the legislature; every reasonable presumption in support of the classification will be indulged in and if it can be reconciled on any reasonable and natural theory it will be upheld. (*American Sugar Refining Co.* v. *Louisiana*, 179 U. S. 89 [21 Sup. Ct. 43, 45 L. Ed. 102]; *Quong Wing* v. *Kirkendall*, 223 U. S. 59 [32 Sup. Ct. 192, 56 L. Ed. 350].)

The taxing of tangible personal property as distinguished from intangible property is perfectly natural and reasonable. That is a distinction commonly recognized by the law. (21 Cal. Jur., p. 641, sec. 3.) Tangible property is that which is visible and corporeal, having substance and body as contrasted with incorporeal property rights such as franchises, choses in action, copyrights, the circulation of a newspaper, annuities and the like. (*Olshewski* v. *Hudson*, 87 Cal. App. 282, 286 [262 Pac. 43].) As it is said in 1 Cooley on Taxation, third edition, 87:

"A state may at its option impose taxes on tangible personal property within its limits irrespective of the residence or allegiance of the owner."

The reason for distinguishing between tangible and intangible property for the purpose of taxation is very evident. The first is visible, accessible and easy to identify and levy upon, while the other is not so readily located or its value ascertained. There is no room for logical controversy over the right to distinguish between tangible and intangible property for the purpose of taxation.

The same thing is true with respect to the distinction between goods sold wholesale and those which are retailed. This is also a natural and a reasonable classification. Goods are usually sold at wholesale in large quantities or in bulk. If such sales were taxable, they would require segregation, elimination of the interests of the manufacturer from the middleman, and exclusion of such articles as might be shipped into the state in original packages. Many other elements render it much more difficult to impose just and uniform taxes on goods sold at wholesale. As merchandise is sold at retail the items are more accessible, readily iden-

tified and less likely to be subject to duplicating or pyramiding the burden of taxes. The United States Supreme Court (*Cook* v. *Marshall County*, 196 U. S. 261 [25 Sup. Ct. 233, 49 L. Ed. 471]) and nearly every state in the Union have recognized and upheld occupation taxes or retail sales tax acts based on the marketing of goods by merchants. (1 Cooley on Taxation, 4th ed., p. 752.) In the case of *Knisely* v. *Cotterel*, 196 Pa. 614 [46 Atl. 861, 50 L. R. A. 86], it is said in that regard:

"The division of vendors into wholesale and retail is perhaps the most obvious and familiar that could be made."

And in *Commonwealth* v. *Clark*, 195 Pa. 634 [46 Atl. 286, 86 Am. St. Rep. 694, 57 L. R. A. 348], it is said:

"It is complained that wholesalers are made a distinct and separate class from retailers, and that the ordinance specially legislates in favor of wholesalers. . . . We see no objection to classifying wholesalers and retailers separately."

The last cited case was affirmed by the Supreme Court of the United States in *Clark* v. *Titusville*, 184 U. S. 329 [22 Sup. Ct. 382, 46 L. Ed. 569]. We are satisfied the California act does not unlawfully discriminate in favor of wholesale merchants or against retail merchants.

The appellants contend that the act is not uniform in its application for the reason that section 8½ thereof provides that "The tax hereby imposed shall be collected by the retailer *from the consumer in so far as the same can be done*", and that since section 3 imposes a tax of 2½ per cent only on the gross receipts of sales it is impossible for the retail merchant to collect the tax from the purchaser on a single item which sells for less than forty cents for the reason that the tax would then amount to less than one cent, which is the smallest coin known to the American financial system. It is argued that a tax based on the gross income of all retail businesses is discriminatory, unjust and void for the reason that it results in penalizing the honest, efficient merchant who relies for success on his good-will, established by maintaining a large volume of business on small margins of profit which profit may even fall below 2½ per cent of his gross receipts, while others, who enjoy a small business with greater profit, may better afford to pay the tax. It is suggested the fifteen-cent stores, the drug stores and other enterprises which depend for success upon numerous sales of small value,

under the "break-down" system adopted by the California merchants, find it impossible to charge the tax to purchasers of numerous single articles of small value. It is asserted the overhead expense of maintaining a business for the sale of articles of small value is relatively greater than that of selling automobiles, machinery, household furniture or equipment which normally return a much larger percentage of profit, and that the present tax system therefore favors the last-mentioned enterprises to the detriment of the former. We are of the opinion these distinctions furnish no reason for declaring the act unconstitutional for lack of uniform operation. The validity of an excise tax for the privilege of maintaining a business is not dependent on the various methods or conditions of every private enterprise.

The system of imposing an excise tax for the privilege of conducting a business which is based on a percentage of the gross receipts therefrom has long been recognized as valid. (*City and County of Sacramento* v. *Crocker*, 16 Cal. 119; *Pauley* v. *State of California*, 75 Fed. (2d) 120; 1 Cooley on Taxation, 4th ed., p. 836, sec. 389; 61 C. J., p. 154, sec. 93.)

The act is not unconstitutional because section 8½ thereof authorizes the retailer to collect the tax "from the consumer *in so far as the same can be done*". This act does not impose the tax on the consumer. The last-mentioned section merely authorizes the retail merchant to reimburse himself from the consumer in so far as it may be consistently done. He is not required to do so. He may waive that right. Section 8 of the act merely declares that it shall be unlawful for the retailer to *advertise* that he will assume and pay the tax or that he will not add it to the price of his merchandise upon sale thereof. In considering the entire act we are impelled to hold it is merely optional with the retail merchant as to whether he will reimburse himself from his customers for the tax he is compelled to pay. The act specifically declares that the tax is imposed *on retail merchants,* and not on the consumers. Section 3 provides in that regard, "For the privilege of selling tangible personal property *at retail a tax is hereby imposed upon retailers*". Section 9 of the act further provides that "The tax levied hereunder *shall be a direct obligation of the retailer*". Section 12 of the act prohibits any retail merchant from maintaining his business

without first procuring a permit therefor as provided by that measure.

There is nothing in the record to support the assumption that the appellants were maintaining their businesses for net profits less than 2½ per cent of the gross receipts, or that they depended upon large volumes of business from which they realized small profits. If that were true it might constitute evidence of poor business management rather than an unequal application of the tax law. Moreover, there is no provision of the act which prohibits merchants from increasing the selling price of their commodities so as to cover the tax or any other legitimate item of cost which will enable them to make a fair profit on sales. Good-will may be acquired by gaining the reputation of selling goods for small profit, but that practice may be extended to an extreme limit so as to invite bankruptcy as a penalty for enjoying good-will. If a tax law were required to classify all enterprises with respect to their magnitude of business and the proportionate profit on each sale, it would be necessary to have a different provision for each separate business, for no two are exactly alike in that regard. Carrying the principle of classification to that extreme limit would lead to an absurdity. The regulation of business so as to return a profit on sales and pay overhead expenses necessarily depends on sound judgment and the will of the merchant. If he is sufficiently anxious to secure customers he may be satisfied with minimum profits. When he becomes more independent he may be contented with fewer sales which produce larger profits. This may result in destroying his good-will and his business, but that lack of business judgment may not be charged to the faults of the sales tax. We have supposed the sale of articles of small value ordinarily pay a profit proportionately larger than those of greater value. Naturally it requires more numerous sales of articles of small value to earn a profit that will warrant the maintenance of a business of that character. Usually these articles are bought and sold in large quantities. Indeed these notion stores have developed into enterprises of tremendous magnitude resulting in chain systems which tend to monopolize the mercantile business of that nature. The small, specialized mercantile establishment has become the victim of that system, rather than of the retail sales tax. It is impossible

to consider all these intricate distinctions between various business enterprises in adopting a uniform sales tax act. We are convinced the law does not require it.

The so-called ''break-down'' system of sales taxes adopted by the merchants of California by agreement among themselves furnishes no evidence that the tax act is unreasonable or unconstitutional. That system is not provided for in the act. It was established by the merchants as a matter of accommodation to enable them to collect the tax from their customers. If a merchant sees fit to waive the collection from his customer of taxes on the sale of an article for a price less than forty cents that is his privilege. If the customer volunteers to pay an excessive tax he may not complain. The entire argument of the appellants on that score is answered by the fact that the law contemplates the imposing of a fixed rate of tax on the *gross receipts* and not on each particular sale of merchandise. That tax is uniform and valid.

The California retail sales tax is not a tax on a franchise as that term is used in article XIII, sections 1 and 14, of the Constitution of California, which require such taxes to be levied in proportion to the ''actual cash value'' of such property. It is true that the term ''franchise'' is sometimes used in the broad sense that it is a privilege conferred upon individuals generally. But that is too narrow a definition to apply to the excise tax upon the privilege of operating the retail enterprises covered by this act. This act affects only the sales of *tangible* personal property, as distinguished from intangible property. The Constitution authorizing the taxing of franchises refers to intangible property. It is said in 1 Cooley on Taxation, fourth edition, page 828, section 386:

''A tax on intangible property in the state . . . is not an invalid burden on interstate commerce. This includes a tax on franchises of a corporation, at least so far as they are otherwise subject to taxation.''

The term ''franchise'' which is applicable to the constitutional provision with respect to levying taxes according to the actual cash value of such property is commonly defined as follows:

''Franchises are special privileges conferred by the government upon individuals and which do not belong to the citizens

of the country generally, of common right." (26 C. J., p. 1008, sec. 1; 12 Cal. Jur., p. 677, secs. 2 and 14; 24 Cal. Jur., p. 85, sec. 69; *Spring Valley Water Works* v. *Schottler*, 62 Cal. 69, 105; *Elliott* v. *City of Eugene*, 135 Or. 108 [294 Pac. 358, 360].)

The retail sales tax is not a tax upon a privilege which does not "belong to the citizens of the country generally, of common right". It is an excise tax on the privilege of operating retail mercantile enterprises which the citizens of this state formerly had a right to maintain. It therefore does not constitute a tax on a franchise, and it does not come within the constitutional provision requiring such taxes to be levied according to the actual cash value thereof.

Nor is the act discriminatory or invalid because section 6 thereof specifically exempts from the application thereof the gross receipts from the sale of motor vehicle fuel. All such motor vehicle fuel is separately taxed by the provisions of the Motor Vehicle Fuel License Tax Act. (Stats, 1923, p. 571, and amendments, Deering's 1935 Supp. to Gen. Laws of Calif., p. 708, Act. 2964.) Motor vehicle fuel is a commodity incident to a large, separate industry, which justifies its separate taxation.

The exempting of food used for free distribution to the poor and needy is in the nature of charity. Its exemption from taxation is uniform and justifiable. It applies to all retail merchants alike.

Nor was it unlawful for the act to specifically exempt from the sales tax the receipts from gas, electricity and water. These commodities are public utilities which are otherwise taxed. So, also, the exemption from tax of the income from sales of property to fulfill contracts for public works which were executed prior to the adoption of the Sales Tax Act is not illegal. That exemption was provided to prevent the act from having the effect of violating the obligations of contracts. It is therefore justifiable and lawful.

The act is not unconstitutional by reason of any of the specific exemptions for which it provides.

It is true that the California Constitution does not specifically authorize the legislature to enact excise measures to tax the privilege of maintaining occupations or business enterprises as it does authorize the levying of taxes on franchises and inheritances. We are of the opinion it is not

necessary that the Constitution should specifically authorize the levying of an excise tax to raise revenue. In the absence of a prohibition of the Constitution against such acts, the legislature has inherent power to adopt them. (*People* v. *Coleman,* 4 Cal. 46, 49 [60 Am. Dec. 581]; *San Jose* v. *San Jose & S. C. R. R. Co.,* 53 Cal. 475, 481; *In re Nowak,* 184 Cal. 701 [195 Pac. 402]; 4 Cooley on Taxation, 4th ed., p. 3383, sec. 1676; 26 R. C. L. 237, sec. 210; *Bradley* v. *City of Richmond,* 227 U. S. 477, 481 [33 Sup. Ct. 318, 57 L. Ed. 603]; *Reif* v. *Barrett,* 335 Ill. 104 [188 N. E. 889].) In the authority last cited it is said in that regard:

"The legislature has the inherent power to tax the occupation of those persons engaged in the business of selling tangible personal property to purchasers for use or consumption."

▇▇▇ The Constitution is deemed to be a reservation of authority rather than a delegation or grant of power, and, consequently, the legislature may be authorized to enact laws which are otherwise valid, when the Constitution fails to prohibit such enactments. (*Macmillan Co.* v. *Clarke,* 184 Cal. 491 [194 Pac. 1030, 17 A. L. R. 288]; *People* v. *County of Glenn,* 100 Cal. 419 [35 Pac. 302, 38 Am. St. Rep. 305]; *Wigley* v. *South San Joaquin Irr. Dist.,* 31 Cal. App. 162 [159 Pac. 985]; *Sheehan* v. *Scott,* 145 Cal. 684 [79 Pac. 350]; 61 C. J., p. 154, sec. 93.)

In accordance with the preceding statement with respect to the power of the legislature to levy taxes which are not specifically prohibited thereby, article XIII, section 15, of the Constitution was adopted at the special election which was held June 27, 1933, which section contains the following provision:

"The legislature shall provide for the raising of revenue *by any form of taxation not prohibited by this Constitution* in amounts sufficient to meet the expenditures of this state not otherwise provided for."

▇▇▇ Article XVIII, section 1, of the Constitution provides with respect to the effectiveness of amendments thereto that:

"If the people shall approve and ratify such amendments, or any of them, by a majority of the qualified electors voting thereon, such amendment or amendments shall become a part of this Constitution."

The preceding amendment therefore became a part of the Constitution upon its approval by a majority vote of the people and authorized the legislature to enact the Retail Sales Tax Act, which was approved July 31, 1933. In 6 Ruling Case Law, page 35, section 28, it is said regarding the time when an amendment to a state Constitution becomes effective:

"Where an existing constitution provides that a proposed amendment, if ratified by the requisite majority, should become part of the constitution, it is usually held that amendments take effect from the time of their actual ratification." (*Seneca Min. Co.* v. *Osmun,* 82 Mich. 573 [47 N. W. 25, 9 L. R. A. 770].)

The Retail Sales Tax Act does not abridge nor deprive an owner of the privilege of engaging in the mercantile business. It has been frequently held that the right to license or tax an occupation or business deprived the owner thereof of none of his inalienable rights to engage in the business.

We are therefore of the opinion the complaint in this action fails to state facts sufficient to constitute a cause of action, and that the demurrer thereto was properly sustained.

The judgment is affirmed.

Steel, J., *pro tem.,* and Pullen, P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 10, 1936.