[S. F. No. 17880. In Bank. Nov. 23, 1949.]

WALTER AINSWORTH, Appellant, v. EDWARD F. BRYANT, as City and County Tax Collector, etc., et al., Respondents.

466

Samuel W. Wicklow for Appellant.

Fred N. Howser, Attorney General, J. Albert Hutchinson, Deputy Attorney General, E. R. Hoerchner, Chas. P. Scully and Holbrook & Tarr, as Amici Curiae on behalf of Appellant.

John J. O'Toole, Dion R. Holm, City Attorneys, and Thomas J. Blanchard, Deputy City Attorney, for Respondents.

SPENCE, J.—Plaintiff, a retail seller of intoxicating liquor, brought this action to enjoin defendants from enforcing against him the ''Purchase and Use Tax Ordinance'' of the city and county of San Francisco. Defendants' demurrer to the complaint was sustained and an injunction was denied. From the judgment accordingly entered, plaintiff appeals.

Duly enacted by the San Francisco Board of Supervisors and approved by the mayor in July, 1947, with the tax levy

effective as of October 1, 1947, the ordinance—No. 4537—is one "imposing [an] excise tax on the retail purchase, use or other consumption of tangible personal property, providing for the registration of retailers, for the levy and collection of such tax and prescribing penalties for the violation of the provisions [thereof]." The sole issue presented is the validity of the application of this ordinance to retailers of intoxicating liquors. It is plaintiff's theory that the tax in question may not be so applied in view of article XX, section 22, of the state Constitution, which provides, in part, as follows: "The State of California, subject to the Internal Revenue Laws of the United States, shall have the exclusive right and power to license and regulate the manufacture, sale, purchase, possession and transportation of intoxicating liquor within the State . . ." Defendants, on the other hand, maintain that the ordinance is a legitimate revenue measure of general application enacted under the taxing power of the municipality, and that the subjection of plaintiff to its terms is not violative of the cited constitutional provision. Consideration of the purport of the local ordinance in the light of the constitutional limitation sustains the propriety of defendants' position.

The ordinance imposes "an excise tax at the rate of one-half of one per cent of the purchase price . . . on the purchase by any person of tangible personal property from any retailer in the City and County of San Francisco, and on the use or other consumption of tangible personal property in said City and County purchased from any retailer for use or other consumption therein." (§ 15.) It specifies that "every person *purchasing* from a retailer in [said] City and County or *using* or otherwise *consuming* [therein] tangible personal property purchased from a retailer for any such purpose is liable for the tax," and that "his liability is not extinguished until the tax has been paid . . ." (Emphasis added; § 16.) It directs the retailer to collect the tax from the purchaser at the time of sale, but if he fails to do so then the "person upon whom such tax is imposed shall pay the same when due to the Tax Collector . . ." (§ 17.) It requires every retailer to register with the tax collector and set forth certain data on the registration form, and within five days thereafter the tax collector shall issue without charge to the registrant "a certificate of authority . . . to collect the tax from the purchaser," which certificate "shall be prominently displayed" in the registrant's place of business. (§ 19.) The

tax is "due and payable from the purchaser at the time of purchase from a retailer in [said] City and County or, if not so purchased, at the time of using or otherwise consuming tangible personal property in [said] City and County." (§ 20.) The registrant must keep records in the form prescribed by the tax collector and make quarterly returns. (§ 21.) Any violation of the ordinance is made a misdemeanor. (§ 70.)

 Having due regard for the foregoing language of the ordinance as expressive of the legislative intent (Sutherland, Statutory Construction (3d ed.), Horack, vol. 2, ch. 45, p. 314), the tax clearly appears to be one imposed upon the purchaser-consumer, applicable to all purchase transactions in all lines of retail business within the city and county (subject to certain exemptions not pertinent here [§ 18]). The funds realized by the tax are declared to be "for capital expenditures and public improvements and for the servicing of [designated sewer and airport] bonds, and any future bond issues of the City and County for capital expenditures or public improvements." (§ 60.) It is well settled that the power of a municipal corporation operating under a freeholders' charter (as is the city and county of San Francisco) to impose taxes "for revenue purposes, including license taxes, is strictly a municipal affair" pursuant to the direct constitutional grant of the people of the state (Const., art. XI, § 6; *West Coast Adver. Co.* v. *San Francisco*, 14 Cal.2d 516, 524 [95 P.2d 138]), and that "the restrictions on the exercise of that power are only the limitations and restrictions appearing in the Constitution and in the charter itself." (*Ibid*, p. 526.) So it was said in the earlier case of *Ex parte Braun*, 141 Cal. 204, at pages 209-210 [74 P. 780], quoting from Mr. Justice Field in *United States* v. *New Orleans*, 98 U.S. 381 [25 L.Ed. 225]: "A municipality without the power of taxation would be a body without life, incapable of acting, and serving no useful purpose. . . . When such a corporation is created, the power of taxation is vested in it, as an essential attribute, for all the purposes of its existence, unless its exercise be in express terms prohibited. For the accomplishment of these purposes, its authorities, however limited the corporation, must have power to raise money and control its expenditure." Thus, in view of this settled principle, the question arises as to whether there has been reserved exclusively to the state, insofar as concerns intoxicating liquor

(Const., art. XX, § 22), the power of taxation exemplified by the San Francisco ordinance.

As above quoted, section 22 of article XX of the state Constitution—adopted November 8, 1932, and effective on December 5, 1933, concurrently with the repeal of the Eighteenth Amendment to the federal Constitution (*Parente* v. *State Board of Equalization,* 1 Cal.App.2d 238, 240 [36 P.2d 437])—reserved to the state the "exclusive right and power to control, license and regulate" the intoxicating liquor business in its designated phases. (*Sandelin* v. *Collins,* 1 Cal.2d 147, 153 [33 P.2d 1009, 93 A.L.R. 956].) The Alcoholic Beverage Control Act, which was designed to supersede preexisting statutes relating to the regulation and control of the liquor traffic (State Liquor Control Act, Stats. 1933, ch. 658, p. 1697; repealed by Stats. 1935, ch. 330, p. 1152) was enacted in 1935 (Stats. 1935, ch. 330, p. 1123; 2 Deering's Gen. Laws, Act 3796) in the "exercise of the police powers of the State, for the protection of the safety, welfare, health, peace and morals of the people" thereof. (§ 1.) With only two of its sections classifiable as revenue-producing in the imposition of excise taxes (§§ 23, 24; *Empire Vintage Co.* v. *Collins,* 40 Cal.App.2d 612 [105 P.2d 391]), the act is generally regarded as a regulatory measure (see *Yosemite Park & Curry Co.* v. *Collins* (Cal.), 20 F.Supp. 1009, 1015; *State* v. *Glacier Park Co.,* 118 Mont. 205 [164 P.2d 366, 369]), consistent with the established distinction between regulation and taxation as governmental functions. (38 Am.Jur. § 322, p. 15; 3 McQuillin, Municipal Corporations (2d ed. rev.), § 1091, p. 647; 4 Dillon, Municipal Corporations (5th ed.), § 1408, p. 2461.)

The purport of the constitutional provision involving the state's exercise of its police power and referring only to its exclusive authority to "license and regulate" the liquor business was considered in the case of *Los Angeles Brewing Co.* v. *Los Angeles,* 8 Cal.App.2d 391 [48 P.2d 71]. There the city had sought to impose upon and collect from plaintiff company a license tax upon its business of manufacturing and distributing beer and wine within the city. In support of the validity of the ordinance it was argued that the word "license" in the constitutional provision meant "*permit to operate* as distinguished from the power to impose a license tax for the purpose of revenue only as the words 'tax' and 'revenue' do not appear in the amendment." (P. 395.) This argument was rejected as contrary to the judicial interpretation given to the phrase "license and regulate" in previous decisions in this

state (*Ex parte Frank,* 52 Cal. 606, 609 [28 Am.Rep. 642]; *San Jose* v. *San Jose & Santa Clara R. Co.,* 53 Cal. 475, 481; *Ex parte Braun, supra,* 141 Cal. 204, 206; *In re Nowak,* 184 Cal. 701, 705 [195 P. 402]), wherein a grant of such power by the Legislature to a municipality had been held to "include authority to impose a license tax for revenue only." (*Los Angeles Brewing Co.* v. *Los Angeles, supra,* p. 396.) Accordingly, it was deemed proper that the same phrase be similarly construed in the constitutional provision, and therefore the state's "exclusive" licensing power over the liquor business "took away from the political subdivisions of the state the right to impose a *license tax* for the purpose of revenue upon any such business." (Emphasis added; *ibid.*) To the same effect, see *Vitale* v. *City of Los Angeles,* 13 Cal.App.2d 704 705 [57 P.2d 993].

It is to be noted that the court in the Los Angeles Brewing Company case, *supra,* was passing on the constitutional provision (art. XX, § 22) as originally enacted in 1932 and as it stood in 1933, when it contained no express reference to the power of taxation. However, in 1934 the section was amended and there was added, among other provisions, the following: "The State Board of Equalization shall have the exclusive power to license the manufacture, importation and sale of intoxicating liquors in this State, and to collect *license fees* or *occupation taxes* on account thereof . . . The Legislature shall provide for apportioning the amounts collected for *license fees* or *occupation taxes* under the provisions hereof between the State and the cities, counties and cities and counties of the State, in such manner as the Legislature may deem proper." (Emphasis added.) Such amendment is pertinent not only for its removal of the need for judicial interpretation as to the state's "exclusive power" of taxation incident to its control of the liquor business but likewise for its precise limitation as to the extent of that power—wholly consistent with the prior decisions recognizing the collection of "license taxes," whether for purposes of revenue-raising or for regulation, as part of the design of the constitutional reservation of authority in the state. (*Los Angeles Brewing Co.* v. *Los Angeles, supra,* 8 Cal.App.2d 391.)

█ It is significant that in point of time section 22 of article XX of the state Constitution was passed much later than section 6 of article XI, a general law permitting chartered municipalities to reserve to themselves control of all their

"municipal affairs," subject only to express prohibition or limitation. Being special in nature and adopted later, the constitutional provision removing the licensing and regulation of the liquor business from the realm of a municipal affair to that of a matter of general state-wide concern must be held to control in the express field that it covers (*Los Angeles Brewing Co.* v. *Los Angeles, supra,* 8 Cal.App.2d 391, 398), but its effect upon the plenary power of taxation possessed by a chartered municipality as an essential attribute of its existence, and as such power had theretofore existed, should not be extended beyond the express terms of the constitutional reservation on the subject of "intoxicating liquors." (See *Hammond* v. *McDonald,* 32 Cal.App.2d 187, 192-194 [89 P.2d 407].) The limits of the constitutional provision vesting in the state the "exclusive power" to "license and regulate" in designated particulars was recognized in the case of *Three G. Distillery Corp.* v. *County of Los Angeles,* 46 Cal.App.2d 498 [116 P.2d 143], upon rejecting the contention that the "purpose" of the section was "to set up a comprehensive scheme of taxation of intoxicating liquors whereby the state [would] be the sole taxing agency and the municipalities [would] share in the receipts of [that] taxation by receiving from the state a portion of the revenue collected by the state." (P. 500.) After declaring that the "power to license and regulate" did not include the "power to tax," as the distinction between regulation and taxation has been uniformly maintained, the court upheld the county's right to impose a personal property tax based upon "ownership" of intoxicating liquor, and the rule of *Los Angeles Brewing Co.* v. *Los Angeles, supra,* 8 Cal.App.2d 391, was expressly noted as concerned solely with the power to make license tax levies but not therefore becoming authority for "exempt[ing] such property . . . from taxation under article XIII, section 1 of the Constitution." (P. 502.) Where the power of taxation has been lodged in the state to the exclusion of municipalities and other entities of that character, it has customarily been done by specific language expressive of such purpose. Thus in 1933—the year intervening between the 1932 adoption of section 22 of article XX of the Constitution and the 1934 amendment thereto— there were two amendments to article XIII, sections 14 and 16, vesting an exclusive power of taxation in the state over "insurance companies" and "banks," respectively, by expressly providing it to be "in lieu of all other taxes and licenses, State, county, and municipal, . . . except taxes upon

[their] real estate." Yet in 1934 when the constitutional provision as to "intoxicating liquors" was amended so as to include an express reservation of an exclusive power of taxation, the reference was made explicitly to the authority of the "State Board of Equalization" to "collect license fees or occupation taxes" on account of "the manufacture, importation and sale of intoxicating liquors," and only amounts so collected were mentioned for apportionment between the state and municipalities. In thus delineating and limiting the specific, exclusive taxing power of the state over such property, it would appear—under the settled rule of construction "*expressio unius est exclusio alterius*" (Sutherland, Statutory Construction (3d ed.), Horack, vol. 2, § 4915, p. 412)—that no further exclusive power of taxation was intended.

■ Reverting now to consideration of the terms of the San Francisco ordinance, the question arises as to exactly what kind of a tax is thereby imposed. Whatever it is and by whatever name it may be called, the character of the tax "must be ascertained by its incidents, and from the natural and legal effect of the language employed in the [legislative enactment]." (*Ingels* v. *Riley*, 5 Cal.2d 154, 159 [53 P.2d 939, 103 A.L.R. 1].) ■ As appears from the above quoted portions of the ordinance, the tax is exacted of the consumer upon each transaction of sale, thus affecting the "freedom of purchase" within the city. (53 C.J.S. 448.) So classified, it falls under the generic heading of a sales tax (47 Am.Jur. 194), but it rests on a wholly different concept from that underlying an occupation tax imposed upon a merchant for the privilege of doing business and measured by the gross receipts from sales. Illustrative of this latter type is the California Retail Sales Tax Act (Stats. 1933, p. 2599; as amended), which "specifically declares that the tax is imposed *on retail merchants,* and not on the consumers. Section 3 provides in that regard, 'For the privilege of selling tangible personal property *at retail a tax is hereby imposed upon retailers.*' Section 9 of the act further provides that 'The tax levied hereunder *shall be a direct obligation of the retailer.*' " (*Roth Drug, Inc.* v. *Johnson,* 13 Cal.App.2d 720, 736 [57 P.2d 1022].) In view of such explicit provisions establishing that "the tax [is] on the retailer and not on the consumer" (*Meyer Const. Co.* v. *Corbett* (Cal.), 7 F.Supp. 616, 618), the cases have consistently so construed the act in recognition of the legislative intent. (*National Ice & Cold Storage Co.* v. *Pacific Fruit*

*Express Co.,* 11 Cal.2d 283, 289 [79 P.2d 380], and cases cited; see, also, *Western Lithograph Co.* v. *State Board of Equalization,* 11 Cal.2d 156, 162 [78 P.2d 731, 117 A.L.R. 838]; *De Aryan* v. *Akers,* 12 Cal.2d 781, 783 [87 P.2d 695].) While the act authorizes the retailer to collect the tax "from the consumer *in so far as the same can be done"* (§ 8½), that does not make it a consumer's tax. Rather under the cited section, it is "merely optional with the retail merchant as to whether he will *reimburse himself* from his customers for the tax he is compelled to pay" (emphasis added; *Roth Drug, Inc.,* v. *Johnson, supra,* 13 Cal.App.2d 720, 736) as his direct obligation to the state in order "to be allowed to sell tangible personal property at retail." (*Meyer Const. Co.* v. *Corbett* (Cal.), supra, 7 F.Supp. 616, 618.) The distinction between the two types of sales taxes is emphasized in the following language from the case of *Western Lithograph Co.* v. *State Board of Equalization, supra,* 11 Cal.2d 156, at page 163: "The law contemplates the imposition of the fixed rate of the tax on gross receipts, as defined by the [Retail Sales Tax] act, and *not on the individual sale of merchandise."* (Emphasis added.) And at page 164, it is said: "The tax being a direct obligation of the retailer and, so far as the consumer is concerned, a part of the price paid for the goods and nothing else, it is neither in fact nor in effect laid upon the consumer. *It does not become a tax on the sale nor because of the sale,* but remains an excise tax for the privilege of conducting a retail business measured by the gross receipts from sales." (Emphasis added.)

But the language of the "Purchase and Use Tax" ordinance here in question expresses a wholly different legislative intent, and the cases interpreting the California Retail Sales Tax Act are therefore not in point. The San Francisco tax is not upon anyone's occupation; therefore it is not an occupation tax. Rather the subject of tax under the ordinance is the transaction of sale; the purchaser or consumer is made the taxpayer, and the retailer acts only as the tax collector, responsible for remitting it to the taxing authority. The buyer's occupation is not taxed, for it is not a pursuit or occupation to buy at retail for use or consumption. (See *Wiseman* v. *Phillips,* 191 Ark. 63 [84 S.W.2d 91, 96]; *Morrow* v. *Henneford,* 182 Wash. 625 [47 P.2d 1016, 1017].) Such type of sales tax as that imposed by the San Francisco ordinance—levied upon the transaction whereby property is acquired and paid by the purchaser—has been analyzed under similar city ordinances

as a tax upon the consumer, in contrast with a license tax exacted of a merchant for the privilege of vending his merchandise. (*Blauner's Inc.* v. *City of Philadelphia,* 330 Pa. 342 [198 A. 889, 892] ; *Mouledoux* v. *Maestri,* 197 La. 525 [2 So.2d 11, 17-18].) Likewise pertinent in noting the differences between the two types of sales taxes is the case of *Rainier National Park Co.* v. *Martin* (Wash.), 18 F.Supp. 481, where it appears that the State of Washington has included *both* types in its Revenue Act—in provisions similar, on the one hand, to the wording of the San Francisco "Purchase and Use Tax" ordinance and, on the other, to the language of the California Retail Sales Tax Act. As negativing any duplication in the premise of taxation, their respective purport is noted as follows at page 486 : "As seen above, the retail sales tax is applicable to 'each retail sale in this state'; the business and occupation tax is levied upon persons engaged in the business of making sales at retail within this state . . ."

In the light of these observations, it is manifest that the "purchase and use tax" here in question, though classifiable as a sales tax, does not, when applied to the sale of intoxicating liquors, enter into the field of taxation preempted by the state commensurate with its "exclusive power" to levy "license fees or occupation taxes" thereon. (Const., art. XX, § 22.) Levied upon the freedom or privilege of purchase, it is properly denominated in the ordinance as an "excise tax" as distinguished from a personal property tax. (51 Am.Jur. § 292, p. 345; *Blauner's Inc.* v. *City of Philadelphia* (Pa.), *supra,* 198 A. 889, 892; *Mouledoux* v. *Maestri,* 197 La. 525, *supra* [2 So.2d 11, 20] ; *Rainier National Park Co.* v. *Martin* (Wash.), *supra,* 18 F.Supp. 481, 486.) Adopted purely for revenue purposes, it covers all lines of retail business within the city, and retailers of intoxicating liquors become subject to it, not because they sell that particular commodity but because they sell tangible personal property. Under well-settled legal principles, immunity from such a general taxing measure must be clearly established (2 Cooley on Taxation (4th ed.), § 672, p. 1403; *Ramaley* v. *City of St. Paul,* 226 Minn. 406 [33 N.W.2d 19, 23]), and as the "purchase and use tax" here has been analyzed, such exemption does not appear to be the case with respect to the retailer of intoxicating liquors unless he is to be placed in a different category from other retailers because of the regulatory features of the ordinance.

By the San Francisco ordinance the retailer is required to register with the tax collector, procure a certificate of authority to collect the tax, and display it prominently in his store (§ 19) ; to keep records, receipts, invoices, and other pertinent papers in such form as required by the collector (§ 61) ; and to make quarterly returns (§§ 20, 21) ; and he is guilty of a misdemeanor in the event of his violating any provision of the ordinance, or failing to render a return or supplemental return, if required by the collector. (§ 70.) Such requirements appear reasonably adapted to insure the collection and proper remission of the tax, and as so premised, they constitute the maintenance of an accounting standard coincident with the city's taxing power rather than a regulation exclusively reserved to the state in the exercise of its police power over the liquor traffic. (Const., art. XX, § 22.) ▇ Thus, the constitutional provision vests in the state the ''exclusive right and power to . . . regulate'' the ''sale'' and ''purchase'' of intoxicating liquor, but such reservation of authority contemplates a control exercised in the sense of such regulatory measures as ''restrictions as to the class of persons to whom liquors may be sold, and as to the hours of the day and the days of the week during which places of sale may be open.'' (30 Am.Jur. 261.) While the San Francisco ordinance embraces regulations affecting the purchase of intoxicating liquor the same as the purchase of any other tangible personal property within the city, it is no more regulatory of the liquor retailer in his business pursuit than are local and nondiscriminatory fire ordinances, electrical, plumbing and building restrictions, zoning limitations, and the like—municipal regulations which manifestly do not invade the field of regulation envisaged in the state's control of the liquor traffic. ▇ The question here is not whether the ordinance imposing upon the retailer of intoxicating liquor the duty of collecting the ''purchase and use tax'' is a reasonable regulation of his business (*Standard Oil Co.* v. *Brodie,* 153 Ark. 114 [239 S.W. 753, 756] ; *Morrow* v. *Henneford* (Wash.), *supra* [47 P.2d 1016, 1020]), but whether such requirement conflicts in the sense of ''regulation'' such as the constitutional provision reserves to the state and withdraws from the municipality. That it does not seems wholly clear when it is remembered that the city's power to levy such tax would include the power to use reasonable means to effect its collection (see *Rainier National Park* v. *Martin* (Wash.), *supra,* 18 F.Supp. 481, 488; *State* v. *Glacier Park Co.* (Mont.), *supra,* 164 P.2d 366, 370), a right

which a retailer of intoxicating liquor may not successfully contest upon constitutional grounds because of the nature of the commodity which he sells. ██ A particular matter may be a state affair and exclusively subject to state regulation but yet not immune from local taxation for revenue purposes where the tax does not interfere with the field preempted by the state. (*In re Galusha,* 184 Cal. 697, 699 [195 P. 406]; *City of San Mateo* v. *Mullin,* 59 Cal.App.2d 652, 654 [139 P.2d 351].) The field of taxation is replete with examples of a government entity making businesses generally its agent in tax collections and prescribing certain regulations in the accounting therefor, although such businesses are not subject to "regulations" by the governmental body in any sense comparable to the use of the term, for example, in our state constitutional provision relative to the intoxicating liquor business—such as withholding taxes and social security taxes for the United States government, unemployment taxes and numerous excise taxes for the state—"a familiar and sanctioned device" (*General Trading Co.* v. *State Tax Com.,* 322 U.S. 335, 338 [64 S.Ct. 1028, 88 L.Ed. 1309]), "a common and entirely lawful arrangement." (*Monamotor Oil Co.* v. *Johnson,* 292 U.S. 86, 93 [54 S.Ct. 575, 78 L.Ed. 1141].) Accordingly, plaintiff as a retailer of intoxicating liquor may not prevail in his complaint of subjection to the terms of the San Francisco ordinance here in question.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied December 22, 1949.