[Civ. No. 6838.   Third Dist.   Nov. 30, 1942.]

THE AMERICAN DISTILLING COMPANY (a Corporation), Appellant, v. STATE BOARD OF EQUALIZATION, Respondent.

Norman A. Eisner for Appellant.

Fitzgerald, Abbott & Beardsley, as Amici Curiae, on behalf of Appellant.

Earl Warren, Attorney General, Robert W. Kenny, Attorney General, and H. H. Linney, Deputy Attorney General, for Respondent.

THOMPSON, J.—The plaintiff has appealed from a judgment which was rendered against it in a suit to recoup $610.27, paid to the State of California as sales taxes (Stats. 1933, p. 2599, Deering's Gen. Laws, 1933, p. 2360, Act 8493, and amendments) on account of the purchase of certain chemicals which were used in manufacturing commercial alcohol.

The chief contention of the appellant is that portions of the chemicals, in the process of distillation, survived and became component parts of the manufactured alcohol, and that pursuant to an adopted rule of the State Board of Equalization such chemicals were purchased for resale and are therefore exempt from sales taxes. The question to be determined is expressed by the respondent as follows:

"Are chemicals purchased by a manufacturer of commercial alcohol, which are essential to and used in the fermentation and distillation processes in the manufacture of such alcohol but which do not [in their entirety] become a component part thereof, subject to tax under the California Retail Sales Tax Act?"

The appellant is engaged in manufacturing commercial alcohol. In this process a comparatively small proportion of trisodium phosphate, ammonium sulphate and sulphuric acid are used with a much larger quantity of water and molasses to procure fermentation. To explain that process the appellant summarizes the testimony of its witness Dr. Wesley M. Clark, as follows:

"In a mash contained in one tank having a total weight of approximately 435,000 pounds, there are combined approximately 80,000 pounds of molasses, 30 pounds of trisodium phosphate, 180 pounds of ammonium sulphate and 820 pounds of sulphuric acid. The remainder of the mash consists of water. After this mash is completely mixed, yeast is added and fermentation allowed to take place. During fermentation the chemicals break up and form innumerable combinations."

For its use in manufacturing commercial alcohol the appellant purchased quantities of the previously-mentioned chemicals upon which the State Board of Equalization levied and collected sales taxes in the amount of $610.27, which were paid under protest. On the theory that these chemicals became a component part of the alcohol to some extent, and that they were therefore purchased for the purpose of resale, and therefore exempt, this suit was commenced to recoup the payment. The cause was tried by the court sitting without a jury. Oral and documentary evidence was adduced. Three chemistry experts were called and examined. Two of these witnesses testified that the chemicals do remain to some extent in changed form in the finished product of alcohol. The third witness testified that none of the properties of the chemicals remain in the alcohol in any appreciable quantity. The court adopted findings to the effect that "None of the aforesaid chemicals so used in the process of manufacturing commercial alcohol becomes a constituent or component part of the commercial alcohol." Judgment was accordingly rendered against the plaintiff. From that judgment this appeal was perfected.

We are of the opinion the findings and judgment are adequately supported by the evidence. We are persuaded the chemicals were not purchased "for resale in the form of tangible personal property." It is true that tangible personal property which is sold "for resale" is not subject to the tax. (§ 2(c) Cal. Retail Sales Tax Act; *Kirk* v. *Johnson,* 37 Cal. App.2d 224 [99 P.2d 279].) Section 2(c) reads:

"A 'retail sale' or 'sale at retail' means a sale to a consumer or to any person for any purpose *other than for resale in the form of tangible personal property....*"

Under the authorization conferred upon the board by section 27 of the act to adopt and enforce "rules and regulations relating to the administration and enforcement of the provisions of this act," the Board of Equalization apparently adopted rule 3, which provides:

"Gross receipts from sales to manufacturers, producers or processors *of tangible personal property which enters into* and becomes an ingredient or component part of the tangible personal property which they manufacture, produce or process *are not taxable. The fact that the article manufactured, produced or processed is in a different form or of a different character is immaterial."* (Italics added.)

The foregoing rule does not appear to have been either pleaded or received in evidence. Since those omissions are not challenged we may assume the rule may be properly considered in determining this case. The appellant contends that the rule creates an exemption from taxes. The exemptions from sales taxes are specifically enumerated in section 5 of the act as amended in 1935. (Stats. 1935, p. 1253, Deering's Supp. 1935, p. 1958.) No such provision is contained among the exemptions provided for in the statute.

The commingling of ingredients of chemicals which become a component part of tangible personal property manufactured for sale, as provided by the rule above stated, is not mentioned among the exemptions specified in section 5 of the act. The rule does not purport to declare that when *only a proportion* of the elements of tangible personal property is mingled with or becomes a component part of a manufactured article the whole thereof shall be exempt from the provisions of the act. It appears to contemplate the mingling of all elements of the *entire property* as a component part of the manufactured article, in the same or in a different form, before it becomes exempt. We assume that rule would not exempt all fermentation chemicals used in manufacturing commercial alcohol merely because some of the component parts of the chemicals, such as oxygen or hydrogen survive and remain in the alcohol. Appellant's witness, Dr. Clark, testified that all of the elements of fermentation chemicals are not found in the manufactured alcohol. In response to the question, "Do you ordinarily expect to find all the elements of the chemicals combined for manufacturing a commercial product in the finished product?" he said, "No. You do not." He testified that after distillation of the ingredients was completed there is about 5% of the entire quantity which remains as by-products of the alcohol, such as carbon dioxide and fusel oil. Some of these by-products are separately sold. He stated that the carbon which is used in manufacturing alcohol is found in neither the finished product of alcohol nor in the residue which is removed therefrom. We do not understand that the appellant contends that all of the ingredients of the chemicals in question remain in the manufactured alcohol or in its by-products. The appellant's expert witnesses testified that in the process of distillation the component parts of the chemicals are separated and undergo innumerable changes, in which some of the elements are completely

dissipated and lost. The only elements which are retained in part are oxygen and hydrogen. It may therefore not be said that all of the component parts of the distillation chemicals survive and remain in the manufactured alcohol. Assuming that the board had the authority to adopt and enforce the rule in question, which we seriously doubt for the reason that it appears to create exemptions not contemplated by the Sales Tax Act, that rule has no application to this case for the reason that only a small and uncertain proportion of the elements of the chemicals are retained in the alcohol.

Moreover, there is a conflict of evidence as to whether even the oxygen or hydrogen, contained in the chemicals in question, survive and remain in the manufactured alcohol. Dr. Wallace A. Gilkey, an expert chemist, testified that "The chemicals used in assisting the fermentation process would not be found in the final product. . . . The oxygen and the hydrogen which is present in the finished product . . . would be derived from the yeast and from the water and from the sugar; principally from the sugar and from the water." It appears that 90% of the mixture from which the alcohol is manufactured is water. With respect to the use of trisodium phosphate, ammonium sulphate and sulphuric acid, he testified that, "negligible quantities of any of those things" would survive and remain in the alcohol.

The appellant attempted to minimize the effect of Dr. Gilkey's testimony in that regard by intimating that he was not familiar with the scientific tracer system of following various component parts of chemicals, after their separation, into a manufactured product. We may concede it would be difficult to determine the source from which oxygen or hydrogen, which is found in a finished product, is derived. But that problem goes to the weight of the evidence which is solely for the determination of the trial judge. We may not interfere with the conclusions of the trial judge in that regard.

If the rule upon which the appellant relies is construed to mean that when any portion of the chemicals used in manufacturing alcohol remains in the finished product the chemicals are exempt from taxation, the rule is void because it exceeds the authority conferred by section 27 of the Retail Sales Tax Act which merely permits the board to adopt and enforce *regulations relating to the administration and enforcement of the provisions of the act.* That construction of the

rule would have the effect of creating exemptions from taxation which are not contemplated by the act nor included within the exemptions specified in section 5 of the act.

█ There is no merit in appellant's argument that rule 3, which is relied upon in this action, is based on the same principle which is involved in rule 21, which provides that:

"Gross receipts from the sale of feed for the production of food for human consumption, or to persons engaged in the business of selling dairy, poultry and livestock products are not taxable."

The last-mentioned rule is a mere declaration exempting the food products which are specifically provided for by section 5(e) of the Retail Sales Tax Act as amended in 1935. (Stats. 1935, p. 1253.) Rule 21 is therefore not a departure from the statute authorizing the exemption from taxation of such food products.

█ It is true that the Legislature may delegate authority to administrative boards to adopt and enforce reasonable rules for carrying into effect the expressed purpose of a statute even though such rules include the authorization to exercise discretion in doing so, provided that discretion is not purely arbitrary and does not amount to a sanction to add to or change the statute or confer upon the board a right to determine what the law shall be in a particular case. (*Fillmore Union High School Dist.* v. *Cobb,* 5 Cal.2d 26, 33 [53 P.2d 349]; 5 Cal.Jur. 677, § 94; 16 C.J.S. 337, § 133, at p. 341; 11 Am.Jur. 955, § 240.) It is a well-established principle of law that the Legislature may not delegate authority to a board or commission to adopt rules which abridge, enlarge, extend or modify the statute creating the right. (*Campbell* v. *Galeno Chemical Co.,* 281 U.S. 599 [50 S.Ct. 412, 74 L.Ed. 1063, 1069]; *People* v. *Kuder,* 93 Cal.App. 42, 51 [269 P. 198, 630]; 11 Am.Jur. 955, § 240.) In the authority last cited it is said:

"Clearly, the legislative body must declare the policy of the law and fix some kind of legal principles which are to control in given cases. It must provide an adequate yardstick for the guidance of the executive or administrative body or officer empowered to execute the law. . . . In all cases the rules and regulations may be tested in the courts to determine whether they are reasonably directed to the accomplishment of the purposes of the statute under which they are made. Moreover, regulations promulgated by administra-

tive departments may not extend the statute or modify its provisions.''

It is not necessary for us to hold that rule 3, upon which the appellant relies, is absolutely void as an invasion of the province of the Legislature. We are however convinced the construction placed upon it by the appellant, exempting the chemicals from sales tax, merely because some of the elements thereof survive and remain in the manufactured alcohol after the distillation process is completed, is untenable. That construction would result in the creation of an exemption not contemplated by the statute. To that extent, at least, the rule is unconstitutional and void.

The judgment is affirmed.

Adams, P. J., and Schottky, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 28, 1943. Traynor, J., did not participate therein.