[Civ. No. 18146. Second Dist., Div. Two. Dec. 11, 1950.]

LUER PACKING COMPANY (a Corporation), Appellant, v.
STATE BOARD OF EQUALIZATION etc., Respondent.

Bernbaum & Freeman and Max Bernbaum for Appellant.

Fred N. Howser, Attorney General, James E. Sabine and Irving H. Perluss, Deputy Attorneys General, for Respondent.

McCOMB, J.—From a judgment in favor of defendant after trial before the court without a jury in an action to recover a tax paid under protest, plaintiff appeals.

*Stipulated facts:* Plaintiff as a corporation is engaged in the operation of a meat packing business. It makes a skinless wiener or frankfurter sausage prepared in the following manner:

Previously prepared meat emulsion is stuffed into cellulose sausage casings to the full capacity thereof by the use of standard pressure stuffers. Prior to stuffing, the casings are in a substantially dry (to the touch) state. Upon stuffing of a cellulose casing the moisture in the meat emulsion wets the casing and a portion of the glycerine migrates from the casings into the meat. The stuffed tubular casings are then linked to provide frankfurters of the proper length.

The linked frankfurters are spread out on smoke sticks which in turn are racked on smokehouse cages. When the frankfurters have been subjected to the smoking operation for the desired length of time the cages are removed from the smokehouse. During the smoking the frankfurters lose a substantial amount of moisture and at the same time soluble proteins normally present in the meat emulsion migrate to the area immediately adjacent to the inner surface of the casing and a portion of the protein is coagulated, whereby the casing is firmly secured and bonded to the meat mass. At the end of the smoking operation neither the animal casing nor the cellulose casing can be peeled from the frankfurter without disrupting or carrying with it the meat mass of the frankfurter.

The loaded cages after removal from the smokehouse are introduced into a water-cooking apparatus (a Jourdan Cooker)

wherein water of a temperature of about 160 to 170 degrees Fahrenheit is continually recirculated and showered on the frankfurters from approximately 6 to 12 minutes.

Next, the frankfurters, after removal of the cages from the Jourdan Cooker, are quickly cooled by showering with tap water. The frankfurters are then placed in a cooler for a sufficient time to thoroughly chill them and dry the surfaces thereof.

Finally the cellulose casings are peeled from the frankfurter leaving a skinless frankfurter or wiener. Thereafter they are packaged and sent to the retailer for sale.

In the present case defendant levied upon plaintiff a use tax on "cellulose sausage casings," similar to those mentioned above, in the amount of $653.20, together with interest thereon in the amount of $56.02, and penalties of $65.32, resulting in a total amount of $774.54, which plaintiff paid under protest and is now suing to recover.

█ Question: *Is a producer of skinless wieners who purchases cellulose sausage casings primarily for use in the manufacture of skinless wieners and frankfurters as forms or molds, and who, after such use but prior to the sale of the wieners, removes and destroys the casings, subject to a use tax measured by the purchase price of the casings?*

This question must be answered in the affirmative. Pertinent sections of the Revenue and Taxation Code read as follows:

Section 6201. "An excise tax is hereby imposed on the storage, use, or other consumption in this State of tangible personal property purchased from any retailer on or after July 1, 1935, for storage, use, or other consumption in this State at the rate of 3 percent of the sales price of the property, and at the rate of 2½ percent on and after July 1, 1943, and to and including June 30, 1949, and at the rate of 3 percent thereafter."

Section 6202. "Every person storing, using, or otherwise consuming in this State tangible personal property purchased from a retailer is liable for the tax. His liability is not extinguished until the tax has been paid to this State except that a receipt from a retailer maintaining a place of business in this State or from a retailer who is authorized by the board, under such rules and regulations as it may prescribe, to collect the tax and who is, for the purposes of this part relating to the use tax, regarded as a retailer maintaining a place of business

in this State, given to the purchaser pursuant to Section 6203, is sufficient to relieve the purchaser from further liability for the tax to which the receipt refers.''

Section 6241. ''For the purpose of the proper administration of this part and to prevent evasion of the use tax and the duty to collect the use tax, it shall be presumed that tangible personal property sold by any person for delivery in this State is sold for storage, use, or other consumption in this State until the contrary is established. The burden of proving the contrary is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale.''

Section 6008. '' 'Storage' includes any keeping or retention in this State for any purpose except sale in the regular course of business or subsequent use solely outside this State of tangible personal property purchased from a retailer.''

Section 6009. '' 'Use' includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it does not include the sale of that property in the regular course of business.''

 The following arguments by plaintiff are untenable for the reasons stated:

(a) *The artificial casings are exempt from taxation as food products for human consumption.*

It is true that the artificial casings are edible and comestible. Section 6359 of the Revenue and Taxation Code provides as follows:

''There are exempted from the taxes imposed by this part the gross receipts from the sale of and the storage, use, or other consumption in this State of food products for human consumption.

'' 'Food products' include cereals and cereal products, milk and milk products, oleomargarine, meat and meat products, fish and fish products, eggs and egg products, vegetables and vegetable products, fruit and fruit products, spices and salt, sugar and sugar products other than candy and confectionery, coffee and coffee substitutes, tea, cocoa and cocoa products other than candy and confectionery.

'' 'Food products' do not include spirituous, malt, or vinous liquors, soft drinks, sodas, or beverages such as are ordinarily dispensed at bars and soda fountains or in connection therewith, medicines, tonics, and preparations in liquid, powdered, granular, tablet, capsule, lozenge, and pill form sold as dietary supplements or adjuncts.

" 'Food products' also do not include meals served on or off the premises of the retailer or drinks or foods furnished, prepared, or served for consumption at tables, chairs, or counters or from trays, glasses, dishes, or other tableware provided by the retailer."

The food products exempted from tax have been defined by the state Legislature in section 6359, *supra*. Cellulose sausage casings involved herein are obviously not cereal or cereal products, milk or milk products, meat or meat products, or any other of the foods listed in the section. Because the skinless wiener which is food is exempt from tax as meat or a meat product does not establish that the casing which is used in its manufacture is a food product within the meaning of the law.

■ Statutes exempting property from taxation are strictly construed. (*Cypress Lawn C. Assn.* v. *San Francisco,* 211 Cal. 387, 390 [295 P. 813].)

Applying this rule to the above section it is evident that the cellulose casings were not exempt from taxation under the above provisions.

■ (b) *The artificial casings are exempt from tax as human food products within the meaning of section 6359.*

This argument is not sound for the reason that the casings were not purchased nor used by plaintiff as food for human consumption; they were purchased and used solely for the purpose of acting as molds for the production of skinless wieners and frankfurters. The situation is analogous to the use of salt. If salt is purchased for the purpose of seasoning and human consumption it is exempt from tax within the meaning of section 6359. On the other hand if it were purchased solely for the purpose of mixing with ice to make a freezing mixture in the production of ice cream, even though the salt would be consumed in the operation, it would not be exempt from taxation. (*Kirk* v. *Johnson,* 37 Cal.App.2d 224, 228 [99 P.2d 279].)

■ (c) *The artificial casings become an integral or component part of the skinless wiener.*

This argument is likewise fallacious for the reason that though a typical cellulose casing is composed of 64.6 per cent cellulose, 20.4 per cent glycerine and 15 per cent moisture, and that a small amount of the glycerine migrates into the meat of the skinless wiener, such migration is purely coincidental and none of the bulk of the artificial casing which is the cellulose so migrates.

Under these circumstances the artificial casing does not

become an integral or component part of the wiener. (*Cf.*, *Smith Oil & Refining Co.* v. *Department of Finance,* 371 Ill. 405 [21 N.E.2d 292, 294]; *American Distilling Co.* v. *State Bd. of Equalization,* 55 Cal.App.2d 799, 801 et seq. [131 P.2d 609].)

■ (d) *The artificial casings are containers and are therefore exempt from tax under section 6364 of the Revenue and Taxation Code which reads in part as follows:*

"*There are exempted from the taxes imposed by this part, the gross receipts from sales of and the storage, use, or other consumption in this State of:*

"*(a) Nonreturnable containers when sold without the contents to persons who place the contents in the container and sell the contents together with the container.*

"*(b) Containers when sold with the contents if the sales price of the contents is not required to be included in the measure of the taxes imposed by this part.*"

This argument is devoid of merit for the reason that obviously this case does not fall within clause (a) of section 6364 because plaintiff does not sell the contents with the container but removes the casing before the wiener is sold. Likewise it does not fall within clause (b) because the casing is not sold with the contents. The casing is not sold at all by plaintiff but is removed and destroyed.

■ (e) *The tax was imposed upon the peeling of the artificial casings.*

This argument is also devoid of merit for the reason that defendant did not tax plaintiff because of the removal of the casings from the wieners, but imposed the tax upon the purchase and use of the casings as a form or mold in the manufacturing process of the skinless wieners which it sold.

■ (f) *If the tax is permitted to stand it will increase the cost of skinless wieners to the ultimate consumer.*

This argument though one which might be properly addressed to the Legislature is not a matter of judicial concern or consideration in construing the plain language used by the Legislature in adopting the taxing statute set forth above.

Judgment affirmed.

Moore, P. J., and Wilson, J., concurred.