[Civ. No. 22288.  Second Dist., Div. Two.  July 29, 1957.]

GOOD HUMOR COMPANY OF CALIFORNIA (a Corporation), Respondent, v. STATE BOARD OF EQUALIZATION, Appellant.

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, Dan Kaufmann and James C. Maupin, Deputy Attorneys General, for Appellant.

Latham & Watkins and Charles E. Horning, Jr., for Respondent.

FOX, J.—This is an action for a refund of sales taxes allegedly overpaid. The trial court held that plaintiff was entitled to a refund, and the State Board of Equalization has appealed.

Plaintiff is a California corporation engaged in the manufacture and sale of ice cream and ice cream products at retail. In the course of its manufacture and sale, plaintiff

purchases dry ice from suppliers. A part of the claim for refund relates to purchases of dry ice made by the plaintiff during the period from August, 1946, through March, 1949. In connection with these purchases, the plaintiff reimbursed its suppliers for sales tax.[1] Plaintiff claimed a credit against its reported gross receipts for all the purchases of dry ice during this period as "tax paid purchases resold." The remainder of the claim for refund[2] relates to plaintiff's purchases from April, 1949, through March, 1951; plaintiff purchased dry ice during this period under resale certificates and paid no sales tax reimbursement thereon.

The defendant refused to allow plaintiff to take the credit for tax paid purchases resold, and further assessed plaintiff additional sales taxes upon the purchases of dry ice for which resale certificates were given. Plaintiff paid the tax due and filed claim for a refund, which was denied by defendant. Thereafter, plaintiff brought this suit.

The dry ice in controversy is used in two ways by plaintiff. Part of the dry ice is received at plaintiff's manufacturing plant in block form and is there cut into slices. This dry ice is then delivered to the retail stores of plaintiff. When customers purchase ice cream or a stock ice cream item, the dry ice is used in the packing of the merchandise. This is done without request by, or extra charge to, the customer.

The remainder of the dry ice in question is received at plaintiff's catering plant where special orders are made up. This dry ice is likewise cut into slices, and is used in the packing of the special orders which are then transported to the retail stores in a refrigerated truck and later delivered to the customers.

The facts in this case are not in dispute. The question before this court is: May a sales tax properly be levied upon plaintiff's purchases of the dry ice here involved? The trial court held that the sales of dry ice to plaintiff were not

[1]Normally the sales tax is levied upon the retailer, who is in turn required to collect it from the purchaser. See sections 6051 and 6052, Revenue and Taxation Code.

[2]Originally the claim for refund also included amounts paid on purchases of dry ice which was used in the Good Humor trucks to supplement the mechanical refrigeration of these trucks, and dry ice which was used by the maintenance department of the plaintiff in cases where the mechanical refrigeration in a retail store was out of operation (the ice was used as a refrigerant while the refrigerator was being repaired). This ice is no longer the subject of controversy, since plaintiff has admitted that such ice was subject to sales tax.

subject to tax because dry ice is within the ''nonreturnable container'' exemption to the sales tax law. We will consider that question later. First, we must determine whether or not the sales of dry ice were retail sales.

Section 6051 of the Revenue and Taxation Code imposes a tax upon retail sales. A retail sale is defined in section 6007 as ''a sale for any purpose other than resale in the regular course of business.'' Plaintiff's main contention is that the sales to it of the dry ice in question were ''sales for resale'' within the meaning of the Sales and Use Tax Law, rather than ''sales at retail.'' Plaintiff argues that on any realistic appraisal, it is engaged in selling ice cream products, containers, dry ice, labels, and everything else which passes from it to the customer, since all of those things are reflected in the price which it charges the customer. Although there is no extra charge for dry ice, plaintiff asserts that the customer nevertheless pays for it indirectly, and that a resale thus results.

The Supreme Court has answered this argument in *People v. Puritan Ice Co.*, 24 Cal.2d 645 [151 P.2d 1]. In that case sales of ''wet ice'' were made by the ice company in two ways. Part of the ice was sold to an express company, which rented refrigerator cars. The express company placed the ice in the bunkers of its cars and *made an extra charge* for the ice to the buyers of the vegetables, which were shipped in the refrigerator cars by shippers and packers. The remaining ice (about 75 per cent of the ice company's sales) was sold directly to packers and shippers of vegetables. They would place the vegetables in crates lined with paper and packed in ice, and ship the crates in ordinary railroad cars (not refrigerator cars) with ice placed at the door and crushed ice blown over the tops of the crates. Those to whom the packers and shippers sold vegetables were *separately billed* for car ice, crate ice not being separately itemized. The court held that the ice sold by the ice company to the express company and to packers and shippers of vegetables had been sold at retail and not for resale in the regular course of business. The court met the argument here in question as follows:

''. . . The essence of the matter is that the purchasers of the ice are acquiring it for purposs [sic] other than resale. They are not engaged in the ice selling business. They are selling vegetables and the use of the ice or purported sale thereof to the purchasers of the vegetables is merely an incident of that activity. It is common knowledge that the dominant purpose for the use of ice in shipping perishable produce

is to preserve the produce by means of refrigeration. Realistically, the purchasers of the vegetables are not concerned with acquiring ice as such. They are buying vegetables which are protected against deterioration and which will be in a marketable condition when offered for sale by them. Actually, the ice does not become a component part or ingredient of the vegetables, even though the sale is made of the so-called iceberg pack of vegetables. It is an aid in maintaining the condition of the merchandise, and rather than becoming a part of the merchandise, it merely maintains it at the *status quo,* eventually being completely exhausted in the process. Nor does the profit factor with respect to the ice alter the result. Like the charge for the ice, the purported profit on the ice truly should be considered as merely an incidental part of the sale of the vegetables—the sale of the vegetables to be shipped in such a condition that they would not lose their value [pp. 651-652]."

In *People* v. *Monterey County Ice & Dev. Co.,* 29 Cal.App. 2d 421 [84 P.2d 1069], quoted extensively in the Puritan case, it was also held that sales of ice were sales at retail rather than sales for resale. The facts were very similar to those in the Puritan case.

The applicability of the Puritan and Monterey cases to the case at bar is apparent. The "wet ice" in those cases was used for the purpose of preserving vegetables; the dry ice in the present case was used for the purpose of preserving plaintiff's ice cream products from the moment they were delivered to the customers until the time when they were to be consumed. Here, as pointed out in the Puritan case, the customers were not concerned with acquiring dry ice as such. Indeed, they did not even have to request it, nor were they charged for it (as were the buyers in certain instances in the Puritan and Monterey cases). The dry ice does not become a component part of the ice cream product; it is merely an aid in maintaining the condition of the merchandise. It is therefore clear that the sales of dry ice to plaintiff were not sales for resale as that term is used in section 6007, since the dry ice is merely passed on to plaintiff's customers as an incident of its ice cream product sales activity.

Plaintiff's second contention is that, notwithstanding the Puritan and Monterey cases, the sales of dry ice to plaintiff are not subject to tax because dry ice comes within the "nonreturnable container" exemption set forth in section 6364 and defendant's rule 49 (18 Cal. Admin. Code, § 1989).

Section 6364 provides for a sales tax exemption of gross receipts from the sale of and the storage, use, or other consumption of "nonreturnable containers when sold without the contents to persons who place the contents in the container and sell the contents together with the container." This section in effect makes the prescribed use of the container by the person buying it the equivalent of a resale of such container so that the original sale of such container is not a "sale at retail." The section itself does not indicate what items are included within the meaning of "nonreturnable container," but rule 49, enacted pursuant to section 7051, interprets section 6364 and defines containers as "articles in which tangible personal property is placed for shipment and delivery such as wrapping materials, bags, cans, twines, gummed tapes, barrels, boxes, bottles, drums, carboys, cartons, sacks and materials from which such containers are manufactured." The rule goes on to give the following as examples of "nonreturnable containers": wrapping and packing materials, paper bags, twine, cartons, cans, medicine and distilled spirits bottles. Plaintiff argues (and the trial court found) that the dry ice it purchased was used solely as a packing material and thus comes within the meaning of "nonreturnable container." While dry ice may be a packing material as that term is commonly used, whether or not dry ice is within the meaning of that term as contemplated by the Legislature in regard to section 6364 and by the board relative to rule 49 is an altogether different question. It is clear that dry ice as used by plaintiff cannot be considered as a container *as such*. The dry ice is placed inside cardboard containers along with plaintiff's products; it is the cardboard boxes and not dry ice which *contain* the products. As the court observed in the Puritan case, "the issue here involved is ice, and not containers." (P. 652.) So our problem is to determine whether the Legislature intended that dry ice be considered a packing material so as to be included within the meaning of "nonreturnable container." We believe that such was not intended. That our conclusion is supported by the Supreme Court may be inferred by the following discussion in the Puritan case (p. 652):

"Respondent contends that the rules and regulations of the Board of Equalization, the agency entrusted with the enforcement of the Retail Sales Tax Act, to the effect that the sales of crates, wrappers, containers and labels to packers . . . are not taxed to the sellers thereof because they are sold for

resale, results in an unjust discrimination between similar types of merchandise. *Nothing is said in such rules about ice, or icing or refrigeration. Hence, such rules cannot have any application to the instant case.* Whether those rules are right or wrong is a matter upon which we express no opinion. If they are contrary to the correct interpretation they are likewise invalid. . . . But those are matters with which we are not now concerned.'' (Emphasis added.)

■ It is clear that the ice used in the Puritan case was not considered by the court to be within the same category as wrappers or containers or labels. Yet the ice in that case served the same purpose as the dry ice here involved. The main purpose of each of the items enumerated in rule 49 is either to provide a means for containing the product so that it is physically transportable (bags, cans, barrels, boxes, bottles, etc.) or to provide a means for increased safety during transportation (wrapping and packing materials, twines, gummed tapes, etc.). The main purpose of plaintiff's dry ice is to preserve the ice cream products through refrigeration; it is not intended to prevent physical damage to the product or to be a means of containing the products. While it is true that dry ice provides safety by delaying natural deterioration, that is not the purpose for which packing materials are normally used. If the Legislature had intended that such an unusual packing material be included within the meaning of ''nonreturnable container,'' it no doubt would have expressly so provided. ■ This is especially true in light of the well established rule that exemptions from taxes are to be strictly construed against the taxpayer. (*Cypress Lawn C. Assn.* v. *San Francisco,* 211 Cal. 387, 390 [295 P. 813] ; *Luer Packing Co.* v. *State Board of Equalization,* 101 Cal.App.2d 99, 103 [224 P.2d 744].) ■ The mere fact that the term ''wrapping and packing materials'' appears in rule 49 and that dry ice is apparently a packing material does not aid plaintiff, since it is axiomatic that an administrative agency cannot by rule enlarge the scope and effect of a statute. (*American Distilling Co.* v. *State Board of Equalization,* 55 Cal.App.2d 799, 805-806 [131 P.2d 609].)

A further indication of the Legislature's intent is the fact that ice is specifically referred to in another sales tax exemption. Section 6359.5, in effect since 1945 (the Puritan and Monterey cases were decided in 1944 and 1938, respectively), exempts gross receipts from the sale of ice or dry ice used or employed in packing and shipping or transporting food prod-

ucts for human consumption between a point or points within and a point or points without the state. The reference to dry ice was added in 1954 by way of clarification. Defendant's rule 60 (18 Cal. Admin. Code, § 2030), interpreting section 6359.5, points out that the tax applies to sales of ice used for the shipment of food products within the state. Since there is a statute and a rule dealing specifically with ice, and further since that statute and rule deal specifically with the use of ice in the packing and transporting of food products, it seems apparent that the Legislature would have expressly mentioned ice or dry ice if such was intended to be within the meaning of "nonreturnable container."

Again we find support for our conclusion in the Puritan case. The court in that case, while discussing the statute which preceded the present section 6359.5 and which was vetoed by the Governor because it exempted sales of ice for use in intrastate as well as interstate shipments, stated that "Although that bill was vetoed by the Governor, still its passage by the Legislature indicates an impression on its part that it was necessary specifically to exempt ice sold for such purpose. Otherwise, it would be subject to the tax [p. 653]."

Plaintiff is not aided by *Coca-Cola Co.* v. *State Board of Equalization*, 25 Cal.2d 918 [156 P.2d 1]. That case involved the sales of wooden barrels and kegs in which the Coca-Cola Company later sold its products to jobbers. Those items, as used by the Coca-Cola Company, were clearly within the meaning of "nonreturnable container."

From the foregoing it is clear that the dry ice used by plaintiff was not within the meaning of "nonreturnable container" as that term is used in section 6364, and that the sales of dry ice to plaintiff were sales at retail and not sales for resale.

The judgment is reversed with directions to enter judgment for defendant.

Moore, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied August 22, 1957, and respondent's petition for a hearing by the Supreme Court was denied September 25, 1957. Shenk, J., Schauer, J., and Mc-Comb, J., were of the opinion that the petition should be granted.