25 Cal.Rptr. 685]

[Civ. No. 10386. Third Dist. Oct. 24. 1962.]

H. J. HEINZ COMPANY, Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION et al., Defendants and Respondents.

2

Adrian A. Kragen, Sho Soto, Downey, Brand, Seymour & Rohwer and Robert R. Harlan for Plaintiff and Appellant.

Knox, Goforth & Ricksen, Wallace W. Knox and John C. Ricksen as Amici Curiae on behalf of Plaintiff and Appellant.

Stanley Mosk, Attorney General, Ernest P. Goodman and Michael Traynor, Deputy Attorneys General, for Defendants and Respondents.

SCHOTTKY, J.—The appellant, H. J. Heinz Company, a Pennsylvania corporation, is a processor and manufacturer of food products. For its operations its purchases tin cans from the American Can Company and cardboard cases from the F. J. Kress Box Company. Appellant has filed with the aforementioned sellers resale certificates as authorized by the Sales and Use Tax Law and therefore no tax was paid at the time of purchase. One of the processing and manufacturing plants of the appellant is located at Tracy, California. At this facility various fresh food products, including tomato paste, are processed and then canned. The canned tomato paste is packed and shipped to plants outside of this state where the paste is reprocessed. The cans and cardboard

cases handled at the Tracy plant were purchased under resale certificates.

The cans in question were filled with tomato paste and then were packed in cardboard cases. The tomato paste was kept in these containers at a warehouse in Tracy after it was packed until it was shipped to appellant's eastern plant where the paste was reprocessed. Other tomato paste which was to be processed in California, the taxability of which is not involved in this litigation, was also kept at the warehouse in Tracy. It was not certain at the time the packed tomato paste was delivered to the warehouse at Tracy which or how many cardboard cases filled with cans of tomato paste were to be shipped to appellant's eastern plant. On an average the cans which were ultimately shipped to plaintiff's eastern plant were kept in the warehouse at Tracy for a period of 9.7 months after they were filled and packed. On an average the cans of tomato paste shipped from Tracy were kept in plaintiff's eastern warehouse for six months prior to the time they were opened for reprocessing. After the cans containing the tomato paste were emptied at the eastern plant, the cans were discarded. The tomato paste which was removed from the cans was reprocessed for sale.

Appellant anticipated that 90 per cent of the cans and cases in which the tomato paste was packed would be shipped to eastern plants for reprocessing, and for the purposes of this case this percentage was in fact so shipped.

The State Board of Equalization determined that the cases and cans which were used in transporting the tomato paste to plants out of state were subject to tax under the Sales and Use Tax Law. Appellant paid the tax assessed under protest and then filed a claim for refund which was denied. This appeal followed an adverse decision on appellant's suit for a refund in the superior court.

Four sections of Revenue and Taxation Code are involved. They read as follows:

Section 6201. ''An excise tax is hereby imposed on the storage, use, or other consumption in this State of tangible personal property purchased from any retailer . . . for storage, use, or other consumption in this State. . . .''

Section 6008. '' 'Storage' includes any keeping or retention in this State for any purpose except sale in the regular course of business or subsequent use solely outside this State of tangible personal property purchased from a retailer.''

Section 6009. " 'Use' includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it does not include the sale of that property in the regular course of business."

Section 6009.1. " 'Storage' and 'use' do not include the keeping, retaining or exercising any right or power over tangible personal property for the purpose of subsequently transporting it outside the State for use thereafter solely outside the State, or for the purpose of being processed, fabricated, or manufactured into, attached to or incorporated into, other tangible personal property to be transported outside the State and thereafter used solely outside the State."

It is the contention of appellant that section 6009.1 is applicable to the facts of the instant case and that the respondent Board of Equalization has improperly collected the tax and interest.

The principal question to be determined on this appeal is whether the value of the cans and cases is exempt from taxation under section 6009.1. At the outset certain rules must be kept in mind. ▪▪ Exemptions from taxation are strictly construed against the taxpayer. (*Santa Fe Transportation Co.* v. *State Board of Equalization*, 51 Cal.2d 531, 539 [334 P.2d 907].) ▪▪ "The party claiming tax exemption has the burden of showing that it comes clearly within the terms authorizing exemption." (*Atchison etc. Ry. Co.* v. *State Board of Equalization*, 131 Cal.App.2d 677, 682 [281 P.2d 99].) Section 6009.1 has been construed to be an exemption statute. (*Atchison etc. Ry. Co.* v. *State Board of Equalization, supra.*)

We believe that the following memorandum opinion of Honorable James H. Oakley correctly answers the contentions of appellant and we adopt the same as part of the opinion of this court:

"In particular, plaintiff relies upon the provisions of section 6009.1 as eliminating for tax purposes that exercise of dominion over these items which was 'for the purpose of subsequently transporting it outside the State for use thereafter solely outside the State', and also 'for the purpose of being processed, fabricated, or manufactured into, attached to or incorporated into, other tangible personal property to be transported' and used outside the State. It is plaintiff's position that its use is taken out of the taxing statute on both counts; i.e., that the cartons and cans were (1) stored for the purpose of subsequent transportation out of the state, and also

(2) for the purpose of being attached to other tangible personal property (tomato paste) for similar permanent disposition out of the state.

"The *average* of retention, storage and use in California was 9.7 months. The *average* of retention in the state to which the property was shipped was 6 months. (Paragraph VI of the Agreed Statement.) The containers were apparently disposed of (the term used in the Agreed Statement relating to the cans is 'discarded') at the end of the latter time. Thus the useful life of the containers averaged 15.7 months, upon termination of which they are to be considered as having been 'consumed'. Substantially more than one-half of this period was spent in storage in California. In addition to that 'use', the State points out, the process of filling of the containers is to be considered a 'use', and that also occurred in California.

"The burden of establishing an exception from operation of the tax justly falls upon plaintiff who asserts it. It seems to this Court that the purpose of purchasing and using the containers was (1) to fill them with tomato paste, (2) to store and protect the latter within the state until determination of its ultimate allocation and disposition, and (3) thereafter to ship the product (and protect during shipping, handling and any subsequent storage) outside the state. When these uses had ceased, the containers, as noted, have ceased their usefulness and are discarded.

"The first use was a *process*,—virtually momentary in point of time, but important to prepare and protect for subsequent handling. The second use was a form of storage. Its duration is of no great significance, except to illustrate that it was for the business convenience of the taxpayer. The tomato paste (the contents of the packages) was not being used during this interval—except only as it may be said that stocking or maintaining a supply of an ingredient in a warehouse constitutes a use. But the *containers* were obviously in use during all that time, and for the purpose for which they were purchased.

"Under these circumstances it seems clear enough that the containers were not just being used incidentally within the state, merely awaiting shipment out of the state; they were put to a consumptive use in California. On that account it is believed they must bear their share of the tax burden."

We agree with the trial court's analysis. We believe that the only reasonable construction of section 6009.1 is that

it only intends to exclude from the tax property which is purchased and as so purchased is transported out of the state for use there. However, this does not mean that appellant can fill the cans with tomato paste and escape taxation of the container because by filling the cans with tomato paste appellant has used the cans for a purpose other than merely transporting them outside the state for use outside the state.

The further contention of appellant that it is not subject to tax because the cans and containers were processed, fabricated or manufactured into, attached to or incorporated into other personal property to be transported outside of the state within the meaning of section 6009.1 is best answered by the case of *Luer Packing Co.* v. *State Board of Equalization*, 101 Cal.App.2d 99 [224 P.2d 744], which upheld a use tax on the use of sausage casings as forms and molds for wieners. (To the same effect see *Briggs & Co.* v. *District of Columbia* (1952) 196 F.2d 241.) In the *Luer* case a producer of skinless wieners argued that cellulose sausage casings were an integral part of the wiener and, therefore, exempt under section 6364 as containers and under section 6359 as food products. The casings were necessary during the manufacturing process of the wiener and were only removed from the wiener prior to packaging for sale. The court held that the argument that the artificial casings became an integral or component part of the skinless wiener was fallacious because the casings were not sold but removed and destroyed.

No other points raised require discussion.

The judgment is affirmed.

Peek, P. J., and Pierce, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 19, 1962. Traynor, J., and Peek, J., did not participate therein.