[No. D049905. Fourth Dist., Div. One. Feb. 26, 2008.]

SEARLES VALLEY MINERALS OPERATIONS, INC., et al. Plaintiffs and Appellants, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

**COUNSEL**

Winston & Strawn, Charles J. Moll III, Robert A. Julian and Nicole P. Dogwill for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, W. Dean Freeman, Domini Pham and Leslie Branman Smith, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**McINTYRE, J.**—The California Sales and Use Tax Law (Rev. & Tax. Code, § 6001 et seq.) generally imposes a sales tax on a retailer for the privilege of selling tangible personal property at retail and a comparable tax (known as a use tax) on tangible personal property that is purchased from a retailer outside the state but that is thereafter stored, used or consumed by the purchaser within the state. (Rev. & Tax. Code, §§ 6002, 6051; all further statutory references are to this code except as otherwise noted.) Where, however, a purchaser buys or uses tangible personal property for resale in the regular course of its business, neither of these taxes applies. (§§ 6007, 6008, 6009.)

This case presents the issue of whether coal that is purchased outside California and used by the purchaser to produce electricity in the state is subject to the California use tax. The answer to this fundamental issue requires a resolution of two underlying questions: (1) whether the electricity is "tangible personal property" for purposes of the Sales and Use Tax Law, such that the coal used to produce it might qualify as having been purchased for resale; and (2) whether the coal (through its chemical energy) was incorporated into the electricity, thus qualifying its purchase as one for resale, or was instead consumed in the process of generating the electricity.

As explained below, we conclude that electricity is "tangible personal property" under the Sales and Use Tax Law, but that the coal is not incorporated into the electricity and thus its purchase is subject to the California use tax. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Searles Valley Minerals Operations, Inc. (formerly known as IMC Chemicals, Inc.), Oak Power Corp., Ltd., Rio Bravo Poso, Rio Bravo Jasmin and Ace Cogeneration Company, LP (collectively, the Taxpayers), produce and sell electricity to California consumers. In their production plants, crushed coal is combusted to heat boilers and create high pressure steam, which is fed into turbines and causes them to rotate a magnet inside a generator, which in turn produces the electricity.

The Taxpayers purchase their coal from sellers outside of California and do not pay any sales taxes on those purchases. They originally paid more than $5 million in use taxes to California on their purchases of the coal between July 1999 and September 2002, but later filed claims for refunds of those taxes with the State Board of Equalization (the Board). The Board denied a refund on several grounds, including that electricity is not tangible personal property

and that the coal was not incorporated into the electricity, but was instead a manufacturing aid, making its purchase subject to the use tax.

After an unsuccessful administrative appeal of the Board's decision, the Taxpayers filed this action in the superior court, seeking a refund of the taxes paid. For the purposes of trial, the parties stipulated to the foregoing facts and that the Taxpayers purchased coal based on specific representations as to the coal's nominal calorific value, stated in British thermal units (BTU's), and that their purchase prices for the coal were subject to adjustment for any deviations between the delivered coal's represented values and the actual values as determined through sample testing.

At trial, the Taxpayers contended that electricity is "tangible personal property" for purposes of the Sales and Use Tax Law. They further argued that because the coal's energy was converted into the electricity, the purchases of the coal were for the purpose of resale and thus no use tax should have been imposed with respect to the use, storage or consumption of the coal. In support of their latter argument, the Taxpayers introduced expert testimony that coal contains "chemical" or "internal" energy, which is released "under the right conditions" (to wit, upon being combusted with oxygen) to produce thermal energy. Their expert testified that the energy in the coal is "potential" in nature, in that it must be "released" before it becomes physical, which he defined as "having material existence perceptible through the senses." He further testified that the coal's physical representation (its mass) is consumed as a result of the combustion, but that its chemical energy is released in the process.

The Board disagreed with the contention that the coal was incorporated into the electricity and elicited an admission from the Taxpayers' expert that there are no coal molecules present in the electricity produced. It also introduced evidence that all fuels contain potential energy and that any fuel source used in an electrical generation process involving the use of steam would be utilized in the same way, i.e., it would be burned to release chemical energy that would heat the water. The Board also argued that even if coal had been incorporated into the electricity, the purpose of the coal purchases was not for resale because, under existing legal precedent, electricity is not "tangible personal property" and thus its sale could not qualify as a resale of the coal.

Based on a consideration of the evidence and the arguments of the parties, the trial court issued a lengthy and thoughtful statement of decision in which it concluded that, for purposes of the Sales and Use Tax Law, electricity constitutes "tangible personal property." It also found that the coal purchases were nonetheless subject to the use tax because the coal was not incorporated

into the electricity, but was instead used as a catalyst to produce that final product, electricity. The court entered judgment in favor of the Board and the Taxpayers appeal.

## DISCUSSION

### 1. *The Taxpayers' Requests for Judicial Notice*

In the proceedings below, the taxpayers requested that the trial court take judicial notice of materials contained on the Web site pages of the American Coal Foundation and the United States Department of Energy pursuant to Evidence Code section 452, subdivision (h), which permits a court to take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." The trial court denied the request and the Taxpayers contend on appeal that it erred in doing so. We reject their contention.

■ A court may not take judicial notice of any matter "unless authorized or required by law." (Evid. Code, § 450.) The Taxpayers, however, cite no legal authority establishing the propriety of taking judicial notice of these Web sites. ■ Further, although it might be appropriate to take judicial notice of *the existence* of the Web sites, the same is not true of their factual content. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063–1064 [31 Cal.Rptr.2d 358, 875 P.2d 73] [recognizing that although public documents may be proper subjects for judicial notice, the truth of the matters stated in such documents is not], overruled on other grounds by *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1262 [63 Cal.Rptr.3d 418, 163 P.3d 106]; accord, *Starkman v. Mann Theatres Corp.* (1991) 227 Cal.App.3d 1491, 1501, fn. 5 [278 Cal.Rptr. 543].) For these reasons, we conclude that the trial court properly denied the Taxpayers' request for judicial notice.

In response to our request for further briefing on the significance of sections 6353 and 6358.1, the Taxpayers also request that we take judicial notice of certain portions of the legislative history of the former. We grant this unopposed request. (Evid. Code, § 452.)

### 2. *Overview of Applicable Sales and Use Tax Principles*

■ As noted above, California imposes a sales tax on all retailers "[f]or the privilege of selling tangible personal property at retail"; the tax is measured as a percentage of the retailer's gross sales receipts in the state. (§ 6051.) A retail sale is defined as "a sale for any purpose other than resale in the regular course of [the purchaser's] business in the form of tangible

personal property." (§ 6007.) A sale of tangible personal property is presumed to be for retail and the seller bears the burden of proving otherwise. (§ 6091; see *Yamaha Corp. of America v. State Bd. of Equalization* (1999) 73 Cal.App.4th 338, 348 [86 Cal.Rptr.2d 362]; *Associated Beverage Co. v. Board of Equalization* (1990) 224 Cal.App.3d 192, 210 [273 Cal.Rptr. 639].)

■ Where a purchaser buys tangible personal property outside California, the state does not collect a sales tax on those purchases, even for items that are intended for use or consumption here. To prevent retailers that sell products in California from being placed at a disadvantage relative to their foreign competitors, however, the state imposes a comparable excise tax on any person who stores, uses or consumes here tangible personal property that is not otherwise subject to the sales tax. (§§ 6201, 6202, 6401; *Union Oil Co. v. State Bd. of Equal.* (1963) 60 Cal.2d 441, 449–451 [34 Cal.Rptr. 872, 386 P.2d 496]; *Lyon Metal Products, Inc. v. State Bd. of Equalization* (1997) 58 Cal.App.4th 906, 910 [68 Cal.Rptr.2d 285]; see also § 6406 [the taxpayer is entitled to a credit for any sales or use tax paid to the state in which the goods were purchased].) The use tax is thus intended to complement the sales tax so that, between them, "all transactions [that] result in tangible personal property joining the aggregate of capital assets within this state" will be taxed for the support of the state government. (*Union Oil Co. v. State Bd. of Equal., supra,* 60 Cal.2d at p. 449; *McConville v. State Bd. of Equalization* (1978) 85 Cal.App.3d 156, 159 [149 Cal.Rptr. 194].)

■ The law presumes that tangible personal property brought into California is purchased for storage, use or other consumption here. (§ 6246.) However, as with the sales tax, the use tax does not apply to tangible personal property that is purchased for resale purposes. (See §§ 6008 [defining "storage" to exclude "any keeping or retention in this State for . . . sale in the regular course of business"], 6009 [defining "use" to exclude "the sale of that property in the regular course of business"].) The overarching question here is whether the Taxpayers' purchases of the coal were for resale purposes.

## 3. *Standard of Review*

The interpretation of a statute or a regulation presents a question of law and, accordingly, the interpretation of the sales and use tax statutes and regulations is subject to de novo judicial review. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8 [78 Cal.Rptr.2d 1, 960 P.2d 1031]; *Chevron U.S.A., Inc. v. State Bd. of Equalization* (1997) 53 Cal.App.4th 289, 296 [61 Cal.Rptr.2d 608].)

## 4. *Is Electricity Tangible Personal Property?*

■ As noted above, tangible personal property that is purchased for *resale at retail* is not subject to the use tax. (§§ 6008, 6009.) The term

"tangible personal property" is defined in the Sales and Use Tax Law and thus the resolution of this appeal requires us to construe the meaning of the statutory definition. In doing so, we must apply well-established rules of statutory construction, the ultimate goal of which is to ascertain the intent of the Legislature. (See *City of Huntington Beach v. Board of Administration* (1992) 4 Cal.4th 462, 468 [14 Cal.Rptr.2d 514, 841 P.2d 1034].) Because the language of a statute is generally the most reliable indicator of legislative intent, we look to the words used, giving them their ordinary and usual meaning. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166].) If the language is unambiguous, we must presume that the Legislature meant what was said and give effect to the statute's plain meaning. (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 484–485 [17 Cal.Rptr.3d 88].)

█ The term "tangible personal property" is defined in the Sales and Use Tax Laws as personal property that "may be seen, weighed, measured, felt, or touched, or which is in any other manner perceptible to the senses." (§ 6016; see also Civ. Code, § 663 [defining personal property as "[e]very kind of property that is not real [property]"]; *Terrace Water Co. v. San Antonio Light & Power Co.* (1905) 1 Cal.App. 511, 513 [82 P. 562] [holding that electricity is personal property].) Here, the evidence at trial established, and the trial court found, that electricity can be measured and felt and is perceptible to the senses, matters that the Board does not truly dispute. Thus, in accordance with the clear statutory language and the evidence in the record, electricity constitutes tangible personal property within the meaning of section 6016. (See also *Texas Eastern Transmission Corporation v. Benson* (Tenn. 1972) 480 S.W.2d 905, 908 [interpreting a virtually identical definition of "tangible personal property" in the Tenn. sales tax code to include electricity]; *Sommers v. Secretary, Dept. of Revenue* (La.Ct.App. 1991) 593 So.2d 689 [same, La.]; *State Tax Com'n v. Marcus J. Lawrence Mem. Hosp.* (1972) 108 Ariz. 198 [495 P.2d 129, 130] [same, Ariz.]; *Curry v. Alabama Power Co.* (1942) 243 Ala. 53 [8 So.2d 521, 526] [same, Ala.].) █ We find further support for this conclusion by the fact that the Legislature has expressly exempted sales of electricity from the application of sales and use taxes. (§ 6353; see *Guillen v. Schwarzenegger* (2007) 147 Cal.App.4th 929, 946 [55 Cal.Rptr.3d 87] [recognizing that a statutory construction that would render legislative language superfluous is disfavored].)

Despite the obvious implications of the language of section 6016, the Board contends that its decision in *In the Matter of the Appeal of PacifiCorp* (Sept. 12, 2002, No. 2002-SBE-005-A) 2002 Cal.Tax Lexis 469 (*PacifiCorp*) and other authorities require the conclusion that electricity is not tangible personal property within its purview. However, the Board's reliance on its cited authorities is misplaced. For example, *PacifiCorp* addressed the question of whether the sales of electricity constituted sales of "tangible personal

property" for the purposes of applying California's *corporate income tax laws*. (See *PacifiCorp, supra*, 2002 Cal.Tax Lexis 469 at pp. *1, *4.) Because the corporate tax laws did not provide a specific definition of "tangible personal property" (as the Sales and Use Tax Law does), the Board in *PacifiCorp* was required to interpret the meaning of that statutory term by reference to other sources and, in doing so, concluded that electricity was intangible rather than tangible, and that the sale of electricity was properly characterized as the sale of a service rather than a product, and thus did not qualify as tangible personal property for corporate income tax purposes. (*Id.* at pp. *9–*12.)

Notwithstanding the difference in the statutory scheme at issue here and the one involved in *PacifiCorp*, the Board cites to a broad statement in *PacifiCorp* that "for purposes of California tax law, electricity is intangible" as a basis for contending that electricity is not tangible personal property within the meaning of section 6016. (*PacifiCorp, supra*, 2002 Cal.Tax Lexis 469 at p. *27.) However, a review of the *PacifiCorp* decision itself makes clear that its holding is much narrower than the Board suggests and does not purport to define that term as used in the Sales and Use Tax Law. Notably, in its analysis, *PacifiCorp* specifically rejected certain authorities as unpersuasive because they did not involve the application of "corporate franchise or income tax" laws. (*PacifiCorp*, at p. *10.) In addition, the opinion neither referenced nor discussed the definition of "tangible personal property" as set forth in the Sales and Use Tax Law as a basis for its conclusion. Accordingly, *PacifiCorp* is not determinative of, or even relevant to, the issue presently before us.

The Board's citation to *Roth Drug, Inc. v. Johnson* (1936) 13 Cal.App.2d 720, 732–734 [57 P.2d 1022] (*Roth Drug*), is equally unavailing. In that case, certain retail merchants challenged the constitutionality of the Retail Sales Tax Act of 1933 on several grounds, including that it contravened the United States and California Constitutions by unreasonably discriminating between tangible and intangible personal property. The Court of Appeal rejected the merchants' argument, concluding that "the power of the states to make classifications of persons or property for the purpose of taxation is very broad" (*Roth Drug*, at p. 733) that the merchants had not made a sufficient showing to overcome the presumption of statutory validity and that "[t]he taxing of tangible personal property as distinguished from intangible property is perfectly natural and reasonable." (*Id.* at p. 734.)

In the language on which the Board now relies, the appellate court defined tangible personal property as "that which is visible and corporeal, having substance and body as contrasted with incorporeal property rights such as franchises, choses in action, copyrights, the circulation of a newspaper . . .

and the like." (*Roth Drug, supra*, 13 Cal.App.2d at p. 734.) The court went on to say "[t]he reason for distinguishing between tangible and intangible property for the purpose of taxation is very evident. The first is visible, accessible and easy to identify and levy upon, while the other is not so readily located or its value ascertained. There is no room for logical controversy over the right to distinguish between tangible and intangible property for the purpose of taxation." (*Ibid.*)

Although the Board contends that the Retail Sales Tax Act as in effect at the time of the *Roth Drug* case contained a definition for "tangible personal property" that was virtually identical to the current definition in section 6016, the fact is that *Roth Drug* made no reference to the statutory definition in its analysis, which in any event involved an entirely different issue than is presented here. Thus, *Roth Drug* does not provide persuasive authority for the Board's position. (E.g., *Western Landscape Construction v. Bank of America* (1997) 58 Cal.App.4th 57, 61 [67 Cal.Rptr.2d 868].) (For similar reasons, neither do *Miller v. City of Los Angeles* (1921) 185 Cal. 440 [197 P. 342], which involved the issue of whether electricity was "property" within the meaning of a city charter, or the Massachusetts Appellate Tax Board's opinion in *EUA Ocean State Corp. v. Commissioner of Revenue* (Apr. 24, 2006, No. C258405) 2006 Mass.Tax Lexis 35, which involved the issue of how a taxpayer's sale of electricity affected its income tax liability under Massachusetts law.)

Based on the unambiguous language of section 6016 and the evidence presented below, we conclude that electricity is tangible personal property for purposes of the Sales and Use Tax Law.

## 5. *Are the Purchases of Coal for the Purposes of Resale?*

The use of property purchased for resale in the regular course of business is not subject to the use tax (§§ 6007, 6008) and property that is used to make, or is incorporated into, a final product may or may not qualify as having been purchased for resale. (E.g., *Kaiser Steel Corp. v. State Board of Equalization* (1979) 24 Cal.3d 188, 192 [154 Cal.Rptr. 919, 593 P.2d 864] (*Kaiser Steel*); Cal. Code Regs., tit. 18, § 1525 (hereafter, Board Regulation section 1525.) In determining whether the use of such property is subject to the use tax or is exempt as a use for resale, the primary intent of the purchaser (or, as otherwise stated, the primary purpose of the purchase) may be a critical factor. (*Kaiser Steel, supra*, 24 Cal.3d at p. 192, and cases cited therein.)

Thus, vegetable sellers' purchases of ice to preserve their produce during shipment to customers are subject to the use tax because "[t]he essence of the matter is that the purchasers of the ice are acquiring it for [a] purpose other than resale." (*People v. Puritan Ice Co.* (1944) 24 Cal.2d 645, 651–652

[151 P.2d 1]; see *People v. Monterey Ice & Dev. Co.* (1938) 29 Cal.App.2d 421, 424 [84 P.2d 1069]; *Good Humor Co. v. State Board of Equal.* (1957) 152 Cal.App.2d 873, 877 [313 P.2d 640].) Similarly, a farmer's purchase of cows for milk production is subject to the use tax even if the cows are later slaughtered and sold as beef because the primary purpose of the original purchase is for dairy production, a nonexempt use, rather than resale. (*Kirk v. Johnson* (1940) 37 Cal.App.2d 224, 229 [99 P.2d 279].)

The primary purpose rule applicable in the context of manufacturing is set forth in Board Regulation section 1525, which provides:

" '(a) [The use tax] applies to the sale of tangible personal property to persons who purchase it for the purpose of use in manufacturing, producing or processing tangible personal property and not for the purpose of physically incorporating it into the manufactured article to be sold. Examples of such property are machinery, . . . and chemicals used as catalysts or otherwise to produce a chemical or physical reaction such as the production of heat or the removal of impurities.

" '(b) [The use tax] does not apply to sales of tangible personal property to persons who purchase it for the purpose of incorporating it into the manufactured article to be sold, as, for example, any raw material becoming an ingredient or component part of the manufactured article.' " (*Kaiser Steel, supra,* 24 Cal.3d at p. 192.) Pursuant to this rule, tangible personal property that is purchased for use as an aid in the manufacturing process is taxable "despite the fact that some portion [of the property] remains in the finished product . . . ." and "[c]onversely, . . . property . . . purchased for incorporation as a component of the finished product . . . is not taxable despite the fact that some portion may be lost or otherwise dissipated in the manufacturing process." (*Id.* at p. 193; see also Bd. Sales Tax Counsel Rulings 440.1880 (May 26, 1952), 440.0775 (July 24, 1940).) Thus, a steel manufacturer's purchases of certain materials to remove impurities from molten metal are subject to the use tax because the manufacturer's primary purpose is to facilitate the manufacturing process, rather than to resell the portions of those materials recovered as slag as a result of the process. (*Kaiser Steel, supra,* 24 Cal.3d at p. 194.)

Here, although the parties spend much time discussing the primary purpose underlying the Taxpayers' purchases of coal, there is no serious dispute that the purpose of acquiring the coal was to provide the fuel to be used in generating electricity at their plants. Unlike in the examples given above, however, an examination of the Taxpayers' primary purpose in purchasing the coal does not answer the question of whether those purchases were made for resale and are thus not subject to the use tax. Rather, the answer turns on

whether the coal is "physically incorporat[ed]" into the electricity. (Bd. Reg. § 1525; see *Kaiser Steel, supra,* 24 Cal.3d at p. 193.)

A number of Board regulations distinguish between materials that become a part of the manufactured or processed property and materials that are used or consumed in producing the final product for sales and use tax purposes. (See Bd. Reg. §§ 1525, subdivisions (c), (d) [oak used in wine and brandy barrels], 1531 [chemicals used in dressing and dyeing furs prior to sale]; also Bd. Sales Tax Counsel Ruling 440.0775 (July 24, 1940) [wood used to cure meat].) The factors to be considered in determining whether particular property is used in the manufacturing process or becomes part of the finished product are (1) whether the property is physically present in the finished product and (2) whether the property serves a beneficial purpose in the finished product and was put in with the intention that it remain. (Bd. Sales Tax Counsel Ruling 440.1853 (Sept. 16, 1992).)

Here, the uncontroverted evidence at trial establishes that the coal's physical mass is combusted, and thus destroyed, in creating the heat necessary to make the steam and that no component of that mass becomes part of the electricity that the Taxpayers generate. Further, although the Taxpayers contend the evidence at trial established that chemical energy is a physical component of coal, this characterization of the evidence is imprecise. In fact, the Taxpayers' expert testified that the energy in the coal is "potential" rather than physical in nature *until it is combusted,* at which time it takes on a "material existence perceptible through the senses." Further, the evidence was uncontroverted that none of the coal's physical mass ends up as a component of the electricity and, as such, the Taxpayers' use of the coal was essentially as a catalyst, similar to a chemical that is used to produce heat, which under Board Regulation section 1525, subdivision (a) is subject to the use tax.

The Taxpayers cite to California Code of Regulations, title 18, section 1525.2, which provides that "manufacturing" includes "converting . . . property by changing the form, composition, quality, or character of the property for ultimate sale at retail" or improving the property "so that it can perform new or different functions," and contend that according thereto "conversions of raw material . . . always constitute resales as a matter of law . . . ." However, they cite no persuasive authority for this proposition. Further, whether the process of generating electricity, by whatever means, constitutes "manufacturing" within the meaning of this regulation has no bearing on whether any property (i.e., raw material) that is used in that process is incorporated into the final product in accordance with Board Regulation section 1525. (See also *American Distilling Co. v. State Board of Equalization* (1942) 55 Cal.App.2d 799, 803 [131 P.2d 609].)

The Taxpayers also argue that, in order for Board Regulation section 1525, subdivision (a) to apply here, there would have to be another raw material that is incorporated into the electricity. This argument, however, is belied by the language of the regulation itself, which provides that "[the use tax] applies to the sale of tangible personal property to persons who purchase it for the purpose of use in . . . producing . . . tangible personal property" (*ibid.*), such as electricity. Nothing in the regulation requires the existence of more than one raw material.

In addition to the foregoing, we find support for our conclusion that the coal is subject to the use tax in the Revenue and Taxation Code itself, section 6358.1 of which provides in part:

"(a) There are exempted from [sales and use taxes] imposed by this part the gross receipts from the sale of and the storage, use, or other consumption in this state of either of the following:

"(1) Organic products grown expressly for fuel purposes.

"(2) Waste byproducts from agricultural or forest products operations, municipal refuse, or manufacturing which are used in an industrial facility as a fuel source *in lieu of the use of . . . oil, natural gas, or coal.*" (Italics added.) If, as the Taxpayers argue, the use of coal as fuel for the production of electricity was exempt from the use tax as a purchase for resale, so too would *any* fuel used to produce steam in generating electricity. Absent the existence of a specific exemption so providing, we reject the Taxpayers' argument, which would render the foregoing statutory provisions as mere surplusage in this context and run contrary to the legislative purpose underlying the exemption, which is to encourage the use of alternative fuel sources. (See *Union Oil Co. v. State Bd. of Equalization* (1990) 224 Cal.App.3d 665, 671–672 [274 Cal.Rptr. 76]; Stats. 1980, ch. 1248, p. 4225, § 1, eff. Sept. 29, 1980.) Further, because sales of electricity and the heat or resultant energy produced in connection with cogeneration technology are statutorily exempt from California sales and use taxes (§ 6353, subds. (a), (d)), the underlying purpose of the Sales and Use Tax Law to ensure that transactions involving goods purchased, used or stored in California are generally subject to tax once in favor of the state would be defeated if we were to interpret section 6007 broadly, as the Taxpayers urge. (*Wallace Berrie & Co. v. State Bd. of Equalization* (1985) 40 Cal.3d 60, 67 [219 Cal.Rptr. 142, 707 P.2d 204].)

For the foregoing reasons, we conclude that the Taxpayers' purchases of coal were not for the purpose of resale and thus were properly subject to California's use tax.

## DISPOSITION

The judgment is affirmed. The Board is awarded its costs on appeal.

Huffman, Acting P. J., and Aaron, J., concurred.

A petition for a rehearing was denied March 25, 2008, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied May 14, 2008, S162443.